**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**

| | | |
|---|---|---|
| NICOLE P. ERAMO | ) | |
| | ) | |
| | ) | |
| *Plaintiff*, | ) | **Case No. 3.:15-mc-00011-GEC** |
| | ) | |
| v. | ) | |
| | ) | |
| ROLLING STONE LLC, *et al.* | ) | |
| | ) | |
| *Defendants*. | ) | |

---

**NON-PARTY RESPONDENT'S SUPPLEMENTAL RESPONSE IN OPPOSITION TO
PLAINTIFF'S MOTION TO COMPEL PRODUCTION**

---

## TABLE OF AUTHORITIES

**Cases**

*Adair v. EQT Prod. Co.*, No. 1:10CV00037, 2015 WL 505650 (W.D. Va. Feb. 6, 2015) ……...20

*Ahrens v. Ford Motor Co.*, 340 F.3d 1142, 1147 (10th Cir. 2003) ………………………...………24

*Cook v. Howard*, 484 F. App'x 805 (4th Cir. 2012) .................................................................. 13

*Doe v. Salisbury Univ.*, No. CIV. JKB-15-517, 2015 WL 5005811 (D. Md. Aug. 21, 2015) …………………………………………………………………………………………...25

*Harrington v. New England Life Ins. Co.*, 684 F. Supp. 174, 177 (N.D. Ill. 1988) …………...23

*Harrington v. New England Mut. Life Ins. Co.*, 873 F.2d 166 (7th Cir. 1989) ………….………23

*Henson v. Bank of America*, 935 F. Supp. 2d 1128, 1135 (D. Colo. 2013) ……………………..20

*Humbert v. O'Malley*, 303 F.R.D. 461, 465 (D. Md. 2014) …………………………………….23

*In re Subpoena Duces Tecum to AOL, LLC*, 550 F. Supp. 2d 606 (E.D. Va. 2008).................... 16

*James Madison Project v. C.I.A.*, No. 1:08CV1323GBL, 2009 WL 2777961 (E.D. Va. Aug. 31, 2009) .................................................................................................................. 15

*Jordan v. Kollman*, 269 Va. 569, 612 S.E.2d 203 (2005)............................................................ 18

*Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210 (10th Cir. 2011) ...................................... 20

*Kinetic Concepts, Inc. v. ConvaTec Inc., 268 F.R.D. 226, 249 (M.D.N.C. 2010)*……………….14

*MacDermid Printing Sols., L.L.C. v. E.I. Du Pont De Nemours & Co.*, No. 1:10MC37, 2012 WL 734146, at *4 (M.D.N.C. Mar. 6, 2012) …………………………………………………...17

*Robinson v. Quicken Loans, Inc.*, No. 3:12-cv-00981, 2012 WL 6045836 (Dec. 5, 2012)…………………………………………………………………...……………….13

*Sheffield v. Hilltop Sand & Gravel Co.*, 895 F. Supp. 105 (E.D. Va. 1995) .............................. 27

*Singletary v. Sterling Transp. Co.*, 289 F.R.D. 237, 2012 WL 5449687 (E.D. Va. 2012)...... 13,15

*Wolak v. Spucci*, 217 F.3d 157 (2d Cir. 2000)............................................................................. 26

*Wyoming v. U.S. Dep't of Agric.*, 208 F.R.D. 449 (D.D.C. 2002) .......................................... 11,17

**Rules**

Fed. R. Civ. P. 26................................................................................................................... 17,18

Fed. R. Civ. P. 45 ...................................................................................................................... 13

Fed. R. Evid. 412 ................................................................................................................. 21, 24-27

## I.    INTRODUCTION

Plaintiff Nicole Eramo, an associate dean of students at the University of Virginia, asks this Court to impose intrusive and burdensome civil discovery on a non-party sexual assault victim – one whom Dean Eramo counseled – in pursuit of irrelevant evidence and in violation of various legal privileges and protections.  For the reasons set forth in Respondent's Opposition to Plaintiff's Motion to Compel, (Dkt. No. 9) and detailed below, the Court should deny Dean Eramo's request.

*First,* Dean Eramo's requests are fatally defective on their face.  In recognition of this fact, as detailed in Dean Eramo's Supplemental Filing, at the eleventh hour Dean Eramo has dropped more than half of the requests at issue in her motion.  Yet her concession is of no use in rehabilitating her subpoena, because the defects she tacitly admits plagued her abandoned requests continue to apply to the remaining requests.  Certainly the far-ranging requests in her original subpoena, but even her remaining requests, by their own terms, continue to sweep in "all communications" between Respondent and medical and/or counseling professionals, other sexual assault victims, a sexual assault victim support group on UVA's campus, and Respondent's own friends and family, about broad and ill-defined topics, such as communications "relating to the Article." Such facially overbroad and burdensome requests violate Rule 26 and Rule 45 of the Federal Rules of Civil Procedure, her purported attempt to limit the scope of her subpoena provides Respondent with no relief, and warrant denial of Plaintiff's motion outright.

*Second,* even if the requests were proper (which they are not), the discovery sought is not relevant to any party's claim or defense as set forth in the Complaint or Answer as filed. Respondent is not a party to this case and Dean Eramo has no claims against Respondent.  Yet in her briefs in support of her motion to compel, Dean Eramo either mischaracterizes or changes entirely her own claims and the underlying subpoena.  Dean Eramo's actual claims allege that

1

Defendants defamed her by characterizing her as inappropriately responding to reported incidents of sexual assault. It is undisputed that Respondent reported a sexual assault to Dean Eramo, and the intrusive discovery into Respondent's private communications cannot in any way inform Plaintiff's claims. Rather than face the reality that the law prohibits the discovery she seeks, Dean Eramo now inexplicably attempts to rewrite her claims (and her subpoena) apparently to make the centerpiece of her case against Defendants the details of Respondent's sexual assault. The Court should reject Dean Eramo's improper efforts.

*Third*, Dean Eramo seeks this burdensome and irrelevant discovery from a non-party sexual assault victim, whose privacy and dignity interests are afforded even greater protections than those otherwise afforded to all third parties under the Federal Rules. Not only does Dean Eramo ignore these protections, her treatment of Respondent in connection with this motion constitutes exactly the abusive re-victimization that these protections were designed to prevent.

For all these reasons, Respondent respectfully requests the Court deny Plaintiff's motion in its entirety and enter a Protective Order barring the discovery of the evidence sought in Plaintiff's subpoena.

## II. FACTUAL BACKGROUND

In her pleadings, counsel for Dean Eramo makes numerous untrue, unfair, and inflammatory statements regarding Respondent. Respondent rejects Plaintiff's misstatements and characterizations of the facts of this matter and sets forth below the facts[1] that are relevant

---

[1] In support of the necessary factual contentions, Respondent cites largely to the sworn allegations contained in Plaintiff's own complaint, which as binding admissions cannot be contested by Plaintiff here. Plaintiff's pleadings in support of the motion and their exhibits are included in the same single PDF. Respondent's citations to "Pl. Mem." are to the PDF page, rather than the page number of the particular document cited. [Dkt. 1]. Plaintiff's Reply Brief [Dkt. 11] is cited as "Pl. Reply" and Plaintiff's Supplemental Filing [Dkt. 26] is cited as "Pl. Supp."

for the instant motion and Respondent's opposition.

**A.  Counseling by Dean Eramo and Introduction to Rolling Stone By UVA**

Dean Eramo first counseled "Jackie" regarding her sexual assault on May 20, 2013.  This relationship continued and led Dean Eramo to introduce "Jackie" to other individuals on campus that were supposed to help her, including UVA employee Emily Renda and other members of the campus support group One Less.  More than a year later, when Rolling Stone reporter Sabrina Rubin Erdely approached the University in connection with her proposed article on sexual assault on campus, it was the University that suggested Erdely contact "Jackie."  Dean Eramo concedes this.  "Erdely learned of Jackie after speaking with Emily Renda, who was involved in a campus group dedicated to education and awareness about sexual assaults. By the time of the publication of the article, Renda herself was an employee of UVA working on sexual assault issues."  Pl. Mem. at 70.

**B.  Plaintiff's Shifting Claims**

On May 12, 2015, Dean Eramo filed a lawsuit against Rolling Stone LLC, Erdely, and Wenner Media LLC.  Dean Eramo alleged that the Defendants made defamatory statements concerning her in an article published in Rolling Stone discussing the problem of rape on college campuses, with a particular focus on UVA.  *See generally* Pl. Mem. at 33-38. Dean Eramo's allegations amount to a claim that Defendants defamed her in the article by characterizing her as not sufficiently supportive of victims alleging a sexual assault.  *See generally* Pl. Mem. at 34-35.

Plaintiff brings six claims, only the first two of which are based on statements in the article (one addresses the print version and one the web version – the substance of the claims are identical), and therefore are the only claims germane to the Court's relevance determination. The remaining four claims relate to characterizations about the article made by Defendants after

its publication. The two claims actually relating to the article selectively quote five conclusory statements of opinion on the part of the author or others. For example, Dean Eramo cites Erdely's conclusion that when "Jackie" eventually reported her assault "a whole new kind of abuse began" and Erdely's opinion that Dean Eramo should have acted differently based on the opinion of "experts apprised of the situation by RS." Pl. Mem. at 94.

*Dean Eramo's claims do not even purport to include any defamatory statements by "Jackie."* Nor could they, because the statements attributed to Respondent in the article were supportive of Dean Eramo. As Rolling Stone admits in its sworn Answer: "the Article states that Plaintiff put 'Jackie' in touch with Emily Renda and the sexual assault survivors group One Less; that Dean Eramo is 'beloved by survivors, who consider her a friend and confidante'; that survivors 'laud [her] as their best advocate and den mother'; that Jackie called her 'an asset to the community; and that 'students praise' UVA's deans that deal with sexual assault like Dean Eramo 'as caring folks who answer late-night calls from victims and even make emergency-room visits,' among other positive descriptions." Ex. B, Rolling Stone Answer ¶ 175. *See also id.* ¶¶ 4, 179, 181. In fact, less than a week after the article, "Jackie" wrote an open letter to the University reemphasizing her support for Dean Eramo:

> Dean Eramo has truly saved my life. If it were not for her, I do not know if I could be alive today. When I came to Dean Eramo my first year, I was depressed and suicidal...I was barely hanging on. Dean Eramo was helpful and understanding and, above all, compassionate. She listened attentively to my story and provided me with several resources. At the time, I was scared and I felt alone and I was in no position to pursue legal or University action. Dean Eramo gave me the power to make my own decisions--something so small that made me feel like I finally had some sense of control in my life. Eventually, Dean Eramo put me in contact with Emily Renda and other members of One Less. This action alone was probably the best thing anyone has ever done for me. I can't imagine what my life would be like now if it were not for Nicole Eramo.

Ex. A, Letter Advocating for Dean Eramo.

Recognizing the weakness of Plaintiff's case, Defendants raise an affirmative defense that Dean Eramo's claims fail to state a claim for relief. *See* Ex. B, Rolling Stone Answer, at X. But Defendants chose not to file a motion to dismiss Dean Eramo's claims, instead issuing a subpoena to the University seeking wide-ranging discovery into, for example "all reports, complaints, or other communications alleging rape, sexual assault, and/or other sexual misconduct that were communicated or reported to UVA by UVA students" since January 1, 2011. Ex. C, Defendants Subpoena to UVA, at 8-9.

### C. Plaintiff's Third-Party Subpoena

Notwithstanding that Respondent is not a party to this case, nor can comments attributed to her be relevant to Plaintiff's claims (as the only such comments cited in the Rolling Stone article were positive), Plaintiff served a Rule 45 subpoena demanding wide-ranging discovery from Respondent as if she were a party, including (but not limited to) unbounded requests for all communications, from January 1, 2012, through the present between Respondent and a sexual assault counselor (Request 7), a sexual assault support group (Request 11), and any friend or family member, relating in any way to the article (Request 16) or ***any person*** about being the victim of sexual assault (Request 14). *See Pl. Mem. at* 10. Taken together, Dean Eramo's requests call for Respondent's own private counseling communications, medical communications, conversations with other survivors about their own assaults, and conversations with any person about anything discussed in the article, including her underlying assault.

In response, counsel for Respondent served detailed objections, raising numerous independent grounds under Federal and state law barring the discovery sought. *See* Ex. D, Objections and Responses to Third Party Subpoena. These objections are fully set forth in the attached exhibit, but Respondent notes that Respondent's objections included, but were not

limited to, the following: the undue burden to her (especially given her status as a third party), the protections afforded to her privacy and dignity as a victim of sexual assault, privileges that apply to her counseling communications including communications with her former counselor Dean Eramo, Plaintiff's failure to establish any relevance of the evidence to the asserted claims, and the patent lack of necessity or urgency to secure such production from a third party at this juncture in light of other avenues available to Plaintiff.

Plaintiff responded with a letter that ignored the aforementioned objections, and misstated both the law protecting sex assault victims and the facts of the case. *See generally* Pl. Mem. at 27-33. In addition, Plaintiff's letter and the subsequent meet and confer teleconferences with counsel made clear that Plaintiff continued to demand all communications, since January 2012, with any person about any topic referenced in the article, including but not limited to Respondent's sexual assault.

### D. Office of Civil Rights Findings Regarding Dean Eramo and UVA

Subsequent to the filing of Dean Eramo's Complaint in this case, and the service of her subpoena on Respondent, on September 21, 2015, the Office of Civil Rights (OCR) of the Department of Education (DOE) sent a letter to the President of the University of Virginia, containing findings of an OCR investigation, initiated long before the publishing of the article, into UVA's failure to comply with the requirements of Title IX. *See* Ex. E., OCR Findings. The OCR found that "during the 2008-2009 through 2011-2012 academic years, as well as in two reports filed in 2013 and 2014, the University failed to respond in a prompt and equitable manner to many reports of sexual violence that were not filed as formal complaints." Specifically, the OCR found that "with 50 reports of possible sexual harassment, including sexual violence, by students who chose not to file a formal complaint or proceed through the informal resolution

6

process during the 2008-2009 through 2011-2012 academic years . . . the University failed to take appropriate action in 22." *Id.* at 16. Respondent's report to Dean Eramo occurred during this time frame. As the OCR detailed: "Twenty-one of those reports alleged sexual assault, some including rape and gang rape. In all of these cases, the University failed to investigate or otherwise determine what occurred. The University did not assess whether a hostile environment existed for complainants and for the University community and did not take steps to eliminate a hostile environment and prevent its recurrence." *Id.* at 20.

The OCR also made specific findings relating to Dean Eramo and her conduct during the relevant time frame. In her Complaint, Dean Eramo asserts: "In 2010, Dean Eramo became an Associate Dean of Students. In this capacity she continued to chair the Sexual Misconduct Board, and she also took on a greater role as an advocate and supporter of victims of sexual assault, providing outreach and support to individual affected students." Pl. Mem. at 42. The OCR concluded that Dean Eramo's simultaneous exercise of these duties was inappropriate:

> Furthermore, the multiple roles played by the Chair of the SMB over the course of the complaint process created the appearance of a conflict of interest. The individual who served as the Chair of the SMB was also an Associate Dean of Students. She was often the first point of contact for a student who believed she or he had been the victim of sexual misconduct. . . . Because she had these responsibilities as well as the multiple roles associated with serving as the Chair of the SMB, there was an appearance of a conflict of interest among these multiple duties.

*Id.* at 15. The OCR also addressed comments made by Dean Eramo during a campus radio interview that aired in the weeks before the Rolling Stone article was published.[2] "Finally, statements from the Chair of the SMB [Dean Eramo] in a radio interview that was broadcast to the University community constitute an additional basis for the existence of a hostile environment for affected students." Ex. E, OCR Findings, at 21 (emphasis added).

---

[2] The video of this interview is available at https://www.youtube.com/watch?v=g-_yJGs5jeQ (accessed December 31, 2015).

### E. Dean Eramo's Motion to Compel

On November 13, 2015, Dean Eramo filed the instant Motion to Compel Production, which has since been transferred to this Court [Dkt. 1]. In what is perhaps a misguided effort to justify the irrelevant and intrusive discovery that Dean Eramo seeks from Respondent, in both her memorandum in support of this motion, as well as in her reply, Dean Eramo resorts to drawing inaccurate factual conclusions not based on all of the pertinent information and attempts to rewrite both her Complaint and Subpoena.

By way of example, in her pleadings, Dean Eramo states that the Charlottesville Police Department "determined that the story Jackie told *Rolling Stone* was a lie." Pl. Reply at 2. Dean Eramo points to the report issued by the police in support of this conclusion. However, she does not include the statements made by the Chief of Police in releasing the very report she cites, which convey a very different message. Chief Longo stated, "I want to be clear: that doesn't mean that something terrible didn't happen to Jackie on the evening of September 28, 2012." Ex. F, Article on Charlottesville Police Suspending Investigation.

Even more fatal to her motion is Dean Eramo's effort in her briefing to shift away from the actual allegations and claims made in her Complaint. In her Memorandum, Dean Eramo now argues that "[r]egardless of whether any of Jackie's statements to Rolling Stone are alleged to be defamatory, whether the Article accurately depicts Jackie's sexual assault and her supposed suffering at the hands of Dean Eramo are key issues in that case." Pl. Mem. at 14. Dean Eramo makes this assertion despite the fact that none of the statements that are alleged to be defamatory deal ***in any way*** with the details of "Jackie's" sexual assault, nor its depiction in the article. This movement away from the claims contained in her Complaint is unavailing. In conducting its evaluation of relevance, the Court is only permitted to look to the actual allegations and claims in

the Complaint, not the re-characterization or wholesale abandonment of those claims as set forth in later briefing.

Dean Eramo also made various omissions in her filings that bear on the disposition of this motion. One of the prime justifications advanced by counsel for Dean Eramo for seeking discovery from Respondent was that Defendants would refuse to disclose their communications with Respondent on the basis of privilege. Setting aside the non-sequitur of a plaintiff using the alleged burden on the actual parties as a justification for securing discovery from a third-party, that justification no longer exists. Counsel for Respondent was informed by counsel for Defendants, the evening before argument on the motion was to be heard in the Eastern District of Virginia, that Defendants had in fact produced their communications with Respondent. Respondent is unaware of when this production occurred, but at no time prior to the original argument scheduled on this motion did counsel for Dean Eramo notify Respondent, or the court hearing the motion at the time, of this development.

**F. Dean Eramo's Request to Depose "Jackie"**

On December 15, 2015, four days after the Court provided an updated briefing schedule to address the pending motion to compel, counsel for Dean Eramo contacted Respondent's counsel and requested dates in February for the deposition of Respondent. Respondent's counsel made it very clear that they objected to any such deposition on the grounds that it was irrelevant, unnecessary, unduly burdensome and would cause Respondent significant harm. Respondent proposed the parties agree to a revised briefing schedule that would incorporate this additional issue and allow the Court to address all related issues at once. Plaintiff rejected this proposal and when faced with the prospect of trying to justify a deposition to this Court, Plaintiff withdrew their request for a deposition. Plaintiff should not be permitted to revive their request for a

9

deposition at a later date.  They had the opportunity to address this issue with the Court in a timely fashion and they rejected it.  Respondent is entitled to be free from the threat of a possible deposition at some unknown future date.

## G. Dean Eramo's Purported Withdrawal of Numerous Requests from the Pending Motion to Compel

On December 29, 2015, two days before the Court's deadline for the initial set of updated briefing in this matter, Dean Eramo filed a supplemental brief purporting to drop 11 of the 19 enumerated categories of documents for which she is seeking compelled production.  In this filing, Dean Eramo concedes that because she "has received additional productions of documents in the underlying action from both the *Rolling Stone* Defendants and from a variety of other nonparties," these productions "obviate the need for certain documents sought from 'Jackie.'" Pl. Supp. at 1.  At the same time, Dean Eramo continues to seek "16. All communications between you and any other person relating to the Article."  During the meet and confer process, counsel for Dean Eramo has made clear that this request includes communications regarding all topics covered in the article.  Thus, despite Dean Eramo's recent attempt to repair her overbroad requests, the motion continues to seek all of the same sweeping categories of documents as before.

## III.    ARGUMENT

The Court should deny Dean Eramo's motion, as it violates applicable rules of discovery, as well as legal protections for sexual assault victims.  The Court should enter a protective order shielding Respondent from Dean Eramo's unlawful and unduly burdensome discovery.

## A. RULE 26 AND RULE 45 PROHIBIT THE IRRELEVANT AND BURDENSOME DISCOVERY SOUGHT HERE FROM NON-PARTY RESPONDENT

Dean Eramo's subpoena continues to fail under Federal Rules of Civil Procedure 26 and Rule 45.  As discussed in detail in Respondent's Opposition at 19-25, Rule 26 provides

limitations on discovery that are heightened in the protection of third parties. "Non-party status is one of the factors the court uses in weighing the burden of imposing discovery. An undue burden is identified by looking at factors such as relevance, the need for the documents, the breadth of the document request, the time period covered by such request, the particularity with which the documents are described, and the burden imposed." *Wyoming v. U.S. Dep't of Agric.*, 208 F.R.D. 449, 452-53 (D.D.C. 2002).

As explained below, Respondent remains entitled to relief from Dean Eramo's subpoena in light of these foregoing factors.

### 1. The Discovery Sought is Irrelevant to the Claims and Defenses in this Case

In her briefs, Dean Eramo has abandoned her Complaint and she now takes up positions regarding the alleged relevance of the evidence at issue that are unrecognizable when compared to the claims and defenses she must rely on to justify discovery. Her efforts are unavailing and, for the reasons stated in Respondent's Opposition and below, the Court should find that the discovery sought is irrelevant.

Dean Eramo's sworn Complaint alleges that the article made five discrete "false and defamatory statements concerning Dean Eramo." Pl. Mem. at 90. As Dean Eramo is well aware, it is an element of a defamation claim that a statement be of or concerning the plaintiff. *Not a single one of those statements mentions in any way the details of Respondent's assault.* Yet now, Dean Eramo attempts to shift the entire focus of this case to place her unsupported contentions regarding the details of third-party Respondent's assault front and center. In her Reply, Dean Eramo claims that "whether the supposed gang rape at Phi Kappa Psi occurred at all" and "whether Jackie fabricated and/or exaggerated some or all of her account of it to *Rolling Stone*" are central issues in the case. Pl. Reply at 6. But to do so, Dean Eramo is forced to retreat to generalities that have no connection to her claims, stating for example that these issues

are relevant to "whether the article was false" (Pl. Reply at 6) and that the discovery will "tend to demonstrate that Dean Eramo did not seek to cover up a sexual assault." (Pl. Mem at 16). No sensible reading of Plaintiff's own claims supports the idea that she was accused of seeking to cover up the assault. In fact, Dean Eramo's Complaint concedes the article references her repeated explanation that "Respondent" could report her assault in any number of ways. And the blanket claim that the "the article was false" cannot begin to connect the discovery sought to an actual claim or defense sufficient to warrant production.

Despite Dean Eramo's recent insistence to the contrary, "whether the Article accurately depicts Jackie's sexual assault" (Pl. Mem. at 14) is simply not relevant to Dean Eramo's actual claims. Dean Eramo effectively concedes this in her memorandum: "The Article claims that *after Jackie reported her assault to UVA*, Dean Eramo abused Jackie, discouraged Jackie from reporting her gang rape, intentionally coddled Jackie into doing nothing, and took no action in response to Jackie's report - all, allegedly, to protect UVA's reputation." Pl. Mem. at 6 (emphasis added). Setting aside whether this is a fair characterization of what the article claims occurred after "Jackie" reported her assault with Dean Eramo, *it is undisputed that "Jackie" alleged such an assault.* The circumstances of "Jackie's" assault cannot make more or less probable any material fact bearing on whether Dean Eramo "abused," "coddled," or "discouraged" "Jackie".

It is also important to note that Dean Eramo has assiduously avoided claiming that "Respondent" was not the victim of a terrible assault at UVA in September 2012. While she makes various statements that appear designed to implicate such a conclusion at first blush, she has consistently heaped qualification upon qualification in her suggestion as to whether Respondent "exaggerated some or all of her account of it to *Rolling Stone*." In her most recent

phrasing, Dean Eramo claims to be arguing only that "Jackie was not actually the victim of a gang rape *at the Phi Kappa Psi fraternity on September 28, 2012.*" (emphasis added).

Effectively, Dean Eramo's position is now that, while not contesting "Jackie" was assaulted, in order to prevail on her claims that Rolling Stone mischaracterized Dean Eramo's reaction to "Jackie's" *report*, the central issue in this case must be the circumstances of the *assault* that occurred months before "Jackie" ever met Dean Eramo, despite the details of the assault not being addressed *in any way* in the defamatory statements included in the claims themselves. This is at odds not only with logic and common sense, but also Dean Eramo's own Complaint. The evidence Dean Eramo seeks here has no relevance to the claims and defenses in this case and thus there is no basis to grant the motion.

Dean Eramo's suggestion in her Reply that Respondent has failed to establish the burden these irrelevant requests would impose is completely unavailing. Dean Eramo cites *Robinson v, Quicken Loans, Inc.*, No. 3:12-cv-00981, 2012 WL 6045836 (S.D.W. Va. Dec. 5, 2012) and characterizes the holding as follows: "*if the information sought by a subpoena is relevant*, then an undue burden objection must be supported by affidavit or other proof." Pl. Reply at 7 (emphasis added). The *Robinson* opinion is clear that proof by affidavit is only required when the proffered burden involves the resources necessary to comply. The court went on to cite *Singletary* (relied on by Respondent) in reiterating: "However, under Fed.R.Civ.P. 45(c)(3), the undue burden category 'encompasses situations where the subpoena seeks information irrelevant to the case.' *Singletary,* 2012 WL 5449687 (citing *Cook v. Howard,* 2012 WL 3634451 *6, n. 7 (4th Cir. Aug. 24, 2012)). Accordingly, a party opposing discovery sought by subpoena may also demonstrate undue burden by sufficiently articulating how the requested information is irrelevant, even when accounting for the expansiveness of permissible discovery." 2012 WL 6045836, at *3 (S.D.W.Va. Dec. 5, 2012). In fact, the court in *Robinson* repeatedly quashed

subpoena requests like those at issue here that sought broad, irrelevant discovery that would include personal information. "Moreover, the potential for embarrassment or oppression from the disclosure of irrelevant or confidential information contained in other employment-related records, including documentation of unpaid leave, outweighs the apparent benefits of the information; particularly, when considering the needs of the parties and the importance of the documents in resolving the issues." *Id*. at \*4.[3] Respondent has articulated, in detail, here and in previous filings that the requested information is in no way relevant to the actual claims and defenses in this case, and thus has more than established the burden warranting denial of Dean Eramo's motion.

### 2. The breadth, period covered, and lack of particularity of Dean Eramo's requests continue to constitute an undue burden on respondent

The facial overbreadth and intrusiveness of Dean Eramo's subpoena – in terms of scope, time, and topic – is serious and undeniable and is not in any way cured by her eleventh hour attempt to appear reasonable. On its face, the dropping of more than half of her requested categories of documents is a concession that the initial subpoena was overbroad and facially invalid. Dean Eramo's pretext that she has withdrawn her requests at this late hour in light of the documents she has already received is a red herring. On the eve of the December 4, 2015, hearing on this motion in the EDVA, Respondent learned – from Defendants, not from Dean Eramo – that Defendants had already agreed to produce the communications between Defendants and Respondent, and had in fact already produced some of those documents. Furthermore, during the meet and confer process months ago, counsel for Dean Eramo suggested her

---

[3] The only other case cited by Dean Eramo, *Kinetic Concepts, Inc. v. ConvaTec Inc.*, 268 F.R.D. 226, 249 (M.D.N.C. 2010), is inapposite. There, the court refused to consider the responding party's argument of undue burden because it was untimely raised for the first time in a sur-reply brief, and even then consisted of one-line without any facts or argument to support the claim. Respondent has been clear and emphatic as to the undue burden posed by this subpoena at every turn.

possession of documents from third parties.  Yet Dean Eramo moved to compel on all the categories contained in her subpoena, and at no time prior to two days ago did she narrow the requests.  Moreover, Dean Eramo's concession does not provide any meaningful relief to Respondent, as she continues to demand documents that encompass the categories she claims to no longer be seeking. In fact, all Dean Eramo's Supplemental Filing does is further highlight the unreasonableness of her conduct to date and the continued impermissible burden posed by her remaining requests.

Requests 3-5 and 8-11 had sought all of Respondent's private communications with various friends about the assault since 2012.  Requests 17 and 19 had demanded all social media, text, or other digital messages relating to Respondent's assault or any other "of the foregoing topics," which include "[a]ll communications between you and any other person in which you reference in any way being the victim of an alleged sexual assault on the UVA campus" (Request 14).

As addressed in detail in Respondent's Opposition at 19-21, courts routinely reject as facially overbroad subpoenas requesting all communications for a particular period or all documents "relating to" a subject.  "A request for all documents 'relating to' a subject is usually subject to criticism as overbroad since life, like law, is a 'seamless web,' and all documents 'relate' to others in some remote fashion.  Such a request unfairly places the onus of non-production on the recipient of the request and not where it belongs—upon the person who drafted such a sloppy request."  *James Madison Project v. C.I.A.*, No. 1:08CV1323GBL, 2009 WL 2777961, at *4 (E.D. Va. Aug. 31, 2009)(internal citations and punctuation omitted).  *See also Singletary v. Sterling Transp. Co.*, 289 F.R.D. 237, 241 (E.D. Va. 2012) ("Such subpoenas could lead to the production of medical information, social security numbers, payroll

information, income tax information, information about family members, and other documents completely extraneous to this litigation, and the Court finds it difficult to conceive of subpoenas which could be more expansively written than these."); *In re Subpoena Duces Tecum to AOL, LLC*, 550 F. Supp. 2d 606, 612 (E.D. Va. 2008)("State Farm's subpoena remains overbroad because the e-mails produced over a six-week period would likely include privileged and personal information unrelated to the *McIntosh* litigation, imposing an undue burden on Cori Rigsby.").

Dean Eramo's reply brief does not cite a single case upholding the enforcement of such facially overbroad and defective requests, and her subsequent decision to withdraw them demonstrates she could not. Yet Dean Eramo continues to seek production of documents described in Request 16, which is as overbroad and indefensible as those she has abandoned. Request 16 seeks "All communications between you and any other person relating to the Article" and the expansive definitions included in the subpoena instructions, along with Dean Eramo's positions during the discovery process, indicate that this request as drafted encompasses substantially the same documents as demanded by Requests 3-5 and 8-11 and 19. Thus, Dean Eramo's last minute adjustment of her demands has done nothing to cure the undue burden posed by the facial overbreadth and intrusiveness of her subpoena.

### 3. The Evidence has Already Been Obtained From Other Parties

For some inexplicable reason, Plaintiff continues to attempt to enforce an overbroad and intrusive subpoena on a former victim, whom she counseled, who is not a party to this case *despite having already received the documents from other parties*. This tactic is inappropriate, unnecessary, and constitutes an additional undue burden. Again, Rule 26 mandated the Court assess undue burden "considering the needs of the case", including "prior discovery in the case .

. .".  The new text of Rule 26 is even more restrictive, only providing for discovery that is "proportional to the needs of the case, considering" among other factors "the parties' relative access to relevant information . . ."

Here, Dean Eramo has not only acknowledged that she has already obtained the documents contemplated by her subpoena from other parties, including Defendants, ***she concedes that this obviates the need for documents from Respondent***.  This is understandable, as Dean Eramo's original contention was that discovery from Respondent was justified by Plaintiff's potential inability to obtain these documents from Defendants or other parties.  By Plaintiff's own formulation, then, any alleged need for discovery has been mooted.[4]  Yet inexplicably, Dean Eramo continues to demand production of documents set forth in Requests 1, 2, 17, and 18, which she has already received from Defendants.  As discussed in Respondent's Opposition, in *Wyoming v. U.S. Dep't of Agric.*, 208 F.R.D. 449 (D.D.C. 2002), the court quashed equally burdensome requests, noting "the discovery sought is obtainable from another source that is more convenient, less burdensome, and less expensive. Fed. R. Civ. P. 26(b)(2). Moreover, the discovery is unduly burdensome considering the non-party status of the witnesses."  *Id.* at 454.  *See also MacDermid Printing Sols., L.L.C. v. E.I. Du Pont De Nemours & Co.,* No. 1:10MC37, 2012 WL 734146, at *4 (M.D.N.C. Mar. 6, 2012)("The Court concludes that the information sought from Dr. Beighle, a non-party to the underlying action, is either more readily available from another source or irrelevant.").

The same result is called for here all the more because the discovery ***has admittedly***

---

[4] Respondent has informed Plaintiff that it is Respondent's position that any such documents produced in this case that contain communications with Respondent, constitute "information of a personal or intimate nature regarding any individual" and therefore should be marked as Confidential and treated as such under the Protective Order in this case.

*already been obtained from other sources.*[5]

### 4. Even If Discovery Were Arguably Relevant, It's Probative Value to the Disputed Issues in this Case is Negligible at Best

Another independently sufficient basis to find undue burden under Rule 26 is if the burden imposed on a third party outweighs "the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26. Even if the evidence sought were relevant, which it is not, the probative value to any material issue in this case is negligible.

Dean Eramo's claims are apparently based on statements expressing opinions, inferences, and argumentative conclusions made by Defendants *in spite of* statements attributed to Respondent. As already discussed *supra*, no statements attributed to Respondent are or can in any way be characterized as defamatory. Even the comments from others in the article that Dean Eramo does allege to be defamatory are not statements of provable facts, but statements of opinion. Dean Eramo's entire theory is that Defendant Erdely included her own editorializing about the issues presented in the article, as part of a premeditated effort to create "an article that fulfilled her preconceived narrative about the victimization of women on American college campuses. . ." Pl. Mem. at 36. However, under Virginia law, such conclusory opinions cannot constitute defamation. Under Virginia law, "speech which does not contain a provably false factual connotation, or statements which cannot reasonably be interpreted as stating actual facts about a person cannot form the basis of a common law defamation action. Statements that are relative in nature and depend largely upon the speaker's viewpoint are expressions of opinion." *Jordan v. Kollman*, 269 Va. 569, 576, 612 S.E.2d 203, 206 (2005) (internal citation omitted). Any alleged relevance of the communications sought by Dean Eramo here cannot justify the

---

[5] Dean Eramo adjusts Request 17 to address only public Internet or social media postings. To the extent that such postings exist, the very fact that they would be publicly available and in the possession or control of other parties defeats Dean Eramo's demand for production here, as Respondent made clear in her original objections and prior filings.

burden under Rule 26.

Furthermore, Dean Eramo has premised her entire case on the effect that this article had on her professional standing. Plaintiff's claims are based, in her own formulation, on the charge that "*Rolling Stone* and Erdely attributed to Dean Eramo conduct unfit for a counselor of victims of sexual assault and the head of UVA's Sexual Misconduct Board. Moreover, these statements prejudiced Dean Eramo in her profession as a UVA Dean and administrator who is responsible for the welfare of UVA students and sexual assault survivors." Pl. Mem. at 35. The documents she seeks from Respondent will have no bearing on her ability to make such a showing, which contemplates much broader issues of Dean Eramo's handling of sexual assault in the University of Virginia community.

In fact, the Office of Civil Rights recently made findings regarding the failures of UVA in general, and Dean Eramo in particular, in meeting their obligations to provide for (to use Plaintiff's words) "the welfare of UVA students and sexual assault survivors" under Title IX. The OCR concluded that it was inappropriate for Dean Eramo to serve as a counselor of victims of sexual assault and the head of UVA's Sexual Misconduct Board. It further determined that Dean Eramo violated Title IX and created a hostile environment for sexual assault survivors with her comments to the University community on the campus radio station, only weeks before the article was published.

Plaintiff's theories both of causation and damages are predicated on her reputation as a University administrator that properly responded to allegations of sexual assault. Respondent's private communications with friends and family regarding her ordeal have no bearing on Dean Eramo's claims that the article's inaccurate statements about her conduct as a University administrator, and agent of the University, prejudiced her in her profession. As one court explained, a purpose of the pleading requirement is "to avoid ginning up the costly machinery

19

associated with our civil discovery regime on the basis of a largely groundless claim.'" *Henson v. Bank of America*, 935 F. Supp. 2d 1128, 1135 (D. Colo. 2013 (quoting *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011)). The probative value of the evidence Dean Eramo seeks is non-existent in light of the claims she brings here.

A recent opinion by this court is instructive on this issue of the relative importance of the evidence. In *Adair v. EQT Prod. Co.*, No. 1:10CV00037, the Court addressed the propriety of discovery requests in light of substantial legal barriers to plaintiffs' class certification prospects. 2015 WL 505650 (W.D. Va. Feb. 6, 2015). In doing so, the court first reiterated that Rule 26 "cautions that all permissible discovery must be measured against the yardstick of proportionality." *Id* at *5. The court then concluded: "any conceivable benefits are speculative compared to the certain burden and expense that would be imposed on the defendants or third parties . . . . In particular, the benefit of the proposed discovery is questionable given that the requested documents and depositions would do little to address the obstacles to class certification identified in the court of appeals' opinion." *Id*. at *5. Exactly the same consideration warrants denial of Dean Eramo's motion. The relevance of the evidence she seeks is nonexistent and, even if there were some conceivable, speculative relevance, it would do nothing to address the substantial obstacles to Dean Eramo's claims posed by the nature of the statements alleged and the conclusions of the Federal Government regarding Dean Eramo's failures during the relevant period.

## B. RESPONDENT'S CONFIDENTIAL COUNSELING COMMUNICATIONS ARE PROTECTED UNDER VIRGINIA LAW AND FEDERAL LAW.

Among the remaining requests are communications between Respondent and Dean Eramo, as well as Respondent and the University of Virginia (Requests 6 and 12). As already addressed in detail in Respondent's Opposition at 14-17, Dean Eramo is attempting to demand

from Respondent communications which Dean Eramo cannot disclose to third parties because of Dean Eramo's legal obligations to protect Respondent's privacy and confidentiality.

As the Court is aware, on December 23, 2015, Respondent submitted to the Court objections to the notice received from the University of Virginia regarding the request for production of the educational records of Respondent in connection with this matter. The notice was defective on its face, failing to inform Respondent what documents were contemplated either by the request the University received or its apparent proposed production. Respondent also reiterated her objections to the relevance of any such document in the case and the substantial and unnecessary harm she would suffer by their disclosure.

Dean Eramo cannot attempt an end run around the important aims and protections provided by the counselor/patient privilege and FERPA for her own personal financial gain. These documents are not relevant here, and there is no justification to allow the production of these sensitive and confidential materials in connection with this case.

## C. The Substantial Protections Afforded to Sex Assault Victims By Federal Rule of Evidence 412 Prohibit The Discovery Dean Eramo Seeks.

### 1. Dean Eramo's Recent Conduct Only Magnifies the Harm Posed to Respondent

As discussed in detail in Respondent's Opposition at 6-14, Rule 412 prohibits the discovery sought by Dean Eramo in this case. Under Rule 412, Dean Eramo bears the burden of demonstrating that the probative value of the discovery sought "substantially outweighs the danger of harm to any victim and of unfair prejudice to any party." F.R.E. 412. She cannot meet either component of this burden. As already discussed *supra*, Plaintiff cannot demonstrate that the evidence sought is even relevant to her claims, let alone satisfies the requirement under Rule 26 that the evidence be "relevant to any party's claim or defense ***and*** proportional to the needs of

the case, considering . . . the burden or expense of the proposed discovery outweighs its likely benefit." (emphasis added).

Rule 412 not only requires that the proffered evidence have probative value (which it does not here), but also that the probative value substantially outweighs not only harm to any victim, but the **danger of** such harm. Such harm here is a certainty. Dean Eramo should be well aware of the emotional toll this ordeal has already taken on Respondent. Inexplicably, Plaintiff not only ignores any such prejudice to Respondent in connection with her expansive requests, but repeats the baseless claim that "'Jackie's' Subpoena Response fails to offer any explanation as to why responding to Dean Eramo's subpoena would be unduly burdensome." Pl. Mem. at 15. This is as offensive as it is untrue. In point of fact, in her objections Respondent reiterated **seventeen separate times** that "the irrelevant evidence sought constitutes intimate, personal communications the disclosure of which would violate 'Jackie's' privacy and dignity (as well as the privacy and dignity of others) and subject 'Jackie' to extreme harm." *See generally* Pl. Mem. at 110-25.

It is self-evident to any fair-minded person why being forced to disclose more than three years' worth of private communications regarding one's sexual assault and its aftermath would constitute a severe emotional burden to any victim. Furthermore, there is voluminous medical literature documenting the trauma experienced by sexual assault victims in being forced to revisit, and thus relive, the details of their assault.[6] Courts routinely recognize that requiring

---

[6] *See e.g.* Courtney Ahrens, *Being Silenced: The Impact of Negative Social Reactions on the Disclosure of Rape*, Am J Community Psychol. 2006 Dec; 38(3-4): 263–274. ("When rape survivors are exposed to victim-blaming behaviors or attitudes, the experience may feel like a 'second assault' or a 'second rape', a phenomenon known as 'secondary victimization' (Campbell, 1998; Madigan & Gamble, 1991; Martin & Powell, 1994; Williams, 1984). In many instances, these behaviors are overt as system personnel explicitly hold survivors responsible for the assault, doubt the veracity of survivors' stories, or minimize the seriousness of the crime

victims to describe their assaults involves the additional and avoidable harm of reliving them. *See e.g. Humbert v. O'Malley*, 303 F.R.D. 461, 465 (D. Md. 2014)(victim's participation would "unnecessarily trigger her PTSD symptoms, forcing her to relive 'overwhelming and debilitating feelings' associated with her rape."); *Harrington v. New England Life Ins. Co.*, 684 F. Supp. 174, 177 (N.D. Ill. 1988) *aff'd sub nom. Harrington v. New England Mut. Life Ins. Co.*, 873 F.2d 166 (7th Cir. 1989)(in insurance case in which sex assault victim was third party, court refused to "force[] the victim to relive that horrible and terrifying evening . . .").  The trauma that being made to relive the ordeal will have on Respondent should be even more readily apparent to Dean Eramo, who deals with the trauma suffered by sexual assault victims on a daily basis and who herself counseled "Jackie" during the relevant period and personally witnessed the terrible effects this assault and the aftermath had on her life years prior to the article.

Dean Eramo's arguments are even more offensive in light of her stated (and then immediately withdrawn) request to depose Respondent.  Dean Eramo filed her Motion to Compel on November 13, 2015.  At no point between the filing of her motion and this Court's scheduling of the briefing and argument of the motion did Dean Eramo indicate her intention to serve a deposition subpoena on Respondent.  In fact, Counsel for Dean Eramo acknowledged during the meet and confer process that a deposition of Respondent would be traumatic for her. Then, the day after the Court noticed the instant motion for argument, Dean Eramo requested

---

(Madigan & Gamble, 1991).")); Rebecca Campbell et al., *Preventing the "Second Rape": Rape Survivors' Experiences with Community Service Providers*, 16 J. INTERPERSONAL VIOLENCE 1239 (2001); Rebecca Campbell, *What Really Happened? A Validation Study of Rape Survivors' Help-Seeking Experiences with the Legal and Medical Systems*, 20 Violence and Victims 55, 56 (2005).

deposition dates from Respondent, and asked that she reply by three days before Christmas. Counsel for Respondent objected to this irrelevant, unnecessary, unduly burdensome and harmful request and proposed the briefing schedule be updated to present for resolution all outstanding discovery issues. Dean Eramo rejected this proposal and, rather than have the Court adjudicate whether such a deposition is necessary and proper, chose to withdraw their request. Plaintiff should be held to their decision to withdraw the request for Respondent's deposition and not be permitted to renew this request at some unspecified future date. Respondent has already suffered harm as a result of Plaintiff's tactics to date and this should not be allowed to continue.[7]

Equally offensive is Dean Eramo's suggestion that, because Respondent is represented *pro bono* in this matter, she cannot establish that discovery would pose a burden upon her. *See* Pl. Mem. at 18. As Dean Eramo is well aware, the burden at issue in this case is psychological and emotional. The position that anyone represented *pro bono* is barred from making burden arguments is simply untenable.

   2. **Dean Eramo's arguments that Rule 412 does not apply to Respondent's sexual assault are without merit.**

Dean Eramo raises various misguided arguments in opposition to the application of Rule 412 in this case. Not only should the Court reject them, they are themselves evidence of exactly the "invasion of privacy, potential embarrassment and sexual stereotyping" the Advisory Committee Notes emphasize Rule 412 was designed to combat. The Court should invoke Rule 412 to protect Respondent from exactly this conduct.

For example, Dean Eramo argues that Rule 412 should not apply in this case because

---

[7] While there is not yet a subpoena issued for the deposition of Respondent, it bears noting that "[a] court's discretion to quash a discovery request due to a witness' failing health or the overly burdensome nature of the request is well established, particularly where the information is believed to be obtainable from another source." *See e.g. Ahrens v. Ford Motor Co.*, 340 F.3d 1142, 1147 (10th Cir. 2003).

Dean Eramo wrongly suggests that "Jackie" made a false allegation of assault. This argument is so wrongheaded it barely merits a response. As Dean Eramo of all people should understand, Rule 412 was instituted to protect even *alleged* victims, as the very text of the Rule makes clear. "In this rule, 'victim' includes an alleged victim." F.R.E. 412. Dean Eramo's position that the party attempting to violate Rule 412 gets to be the arbiter of whether a person receives the protections of the Rule is unsupportable and would negate the entire purpose of the Rule.

Dean Eramo also suggests that Rule 412 does not apply in defamation cases. She bases her argument on a reading of the Advisory Committee notes that is both incorrect and indefensible. All the note says is that where a Plaintiff sues a Defendant for defamation based on a statement that the parties had been engaged in a sexual relationship, the alleged defamatory statement about their sexual relationship does not render the Plaintiff a victim of sexual misconduct. This note has zero relevance to the present situation where the sexual misconduct at issue is not the alleged defamatory statement, but rather actual criminal sexual assault, which it is beyond argument is squarely addressed by Rule 412. In case there were any doubt as to the proper reading of the section cited by Plaintiff, the matter in *Doe v. Salisbury Univ.*, No. CIV. JKB-15-517, 2015 WL 5005811 (D. Md. Aug. 21, 2015) (discussed in Respondent's Opposition at 11-12) involved allegations of defamation and the court there indicated Rule 412 would apply.

Lastly, Dean Eramo incorrectly claims that because the sexual assault Respondent suffered is allegedly relevant to this case, the sex assault is not "other sexual behavior" for purposes of triggering 412's protections. (Pl's Mem. at 17; Reply at 9-12.) Plaintiff's argument is misguided for three independent reasons. *First*, as explained *supra*, the "reverse" Rule 403 balancing test in Rule 412, which carries a presumption of exclusion, applies to evidence that would otherwise be relevant or admissible. The very function of Rule 412 is to require the proponent to demonstrate as a threshold matter that the probative value *of the arguably relevant*

*evidence* substantially outweighs the harm to any victim. "In a civil case, otherwise admissible evidence may only be introduced [under Rule 412] if the proponent can show that its probative value substantially outweighs the danger of harm to any victim and of unfair prejudice to any party." *Wolak v. Spucci*, 217 F.3d 157, 160 (2d Cir. 2000). Dean Eramo has not even attempted to do so here, and merely insisting that the evidence is relevant despite Rule 412 does not begin to satisfy this burden. There would be manifest harm to Respondent and other victims whose personal conversations Plaintiff seeks to examine. Plaintiff has not – and cannot – demonstrate that such harm is substantially outweighed by whatever tangential relevance she claims it would have on her discrete claims for defamation by unrelated parties.

**Second**, contrary to the assertion in her motion, Plaintiff's requests plainly contemplate evidence relating to intimate and private communications that go well beyond her assault. Plaintiff seeks the mandatory production of any communications between Respondent and any other person, to include family, friends, and acquaintances, "relating to the Article." Plaintiff 's assertions notwithstanding, these searching inquiries are not even limited to facts directly relating to the circumstances of the assault itself, and on their face seek any number of communications that relate to intimate matters that are protected by Rule 412.

**Lastly**, Plaintiff's argument is flatly contradicted by the Advisory Committee notes and common sense. The Advisory Committee notes contemplate the exclusion of evidence intrinsic to the assault when it is not relevant to the proffered claims: "The word 'other' is used to suggest **some flexibility** in admitting evidence 'intrinsic' to the alleged sexual misconduct." (emphasis added). Rather than adopt the bright line approach that evidence about the actual sexual assault the victim suffered itself is always relevant, Rule 412 allows merely for flexibility. At the same time, the notes also recognize that the ambit of Rule 412 should expand to address unanticipated applications. The notes open by recognizing "Rule 412 has been revised to diminish some of the

26

confusion engendered by the original rule and ***to expand the protection afforded alleged victims of sexual misconduct***." (emphasis added) Courts in this circuit recognize that "a balancing test must be employed in civil cases because greater flexibility is needed to accommodate evolving causes of action . . ." *Sheffield v. Hilltop Sand & Gravel Co.*, 895 F. Supp. 105, 109 (E.D. Va. 1995) (citing Adv. Comte. Notes to Rule 412).

Construing Rule 412 in accordance with its broad protective purposes requires denial of Dean Eramo's motion, particularly here where Respondent is not a party to the case. It would run totally counter to the public policy of protecting sexual assault victims to allow a civil plaintiff raising unrelated claims to drag a non-party sexual assault victim into litigation and subject her to extremely burdensome and harmful discovery. Such a reading would turn Rule 412 on its head, as it would mean that the Rule provides ***less protections*** to victims as their assault became ***less relevant*** to the instant case. Plaintiff cites no authority in support of her inappropriate reading of Rule 412, and the Court should reject such a deeply flawed interpretation of this important protection and enter a protective order prohibiting discovery. If Rule 412 prevents anything, it is this.

## CONCLUSION

For the reasons stated herein and in Respondent's Opposition to Plaintiff's Motion to Compel, Respondent respectfully requests the court deny Plaintiff's motion in its entirety and further requests that the Court enter a protective order prohibiting discovery in response to all requests contained in Plaintiff's subpoena.


Dated: December 31, 2015                    Respectfully submitted,

                                            */s/ Philip O'Beirne*
                                            Rebecca R. Anzidei (VA Bar No. 46436)
                                            Philip J. O'Beirne (VA Bar No. 71956)
                                            STEIN MITCHELL CIPOLLONE BEATO
                                              & MISSNER LLP
                                            1100 Connecticut Ave., N.W., Ste. 1100
                                            Washington, D.C. 20036
                                            Tel: 202-737-7777
                                            Email: ranzidei@steinmitchell.com

                                            Palma E. Pustilnik (VA Bar No. 73337)
                                            CENTRAL VIRGINIA LEGAL AID
                                            SOCIETY
                                            1000 Preston Avenue, Suite B
                                            Charlottesville, VA 22903
                                            Tel: (434) 327-1443
                                            Email: palma@cvlas.org

                                            Steven D. Rosenfield (VA Bar No. 16539)
                                            Jeffrey Fogel (VA Bar No. 76345)
                                            913 E. Jefferson Street
                                            Charlottesville, VA 22902
                                            434-984-0300 Tel
                                            434-220-4852 Fax

                                            *COUNSEL FOR RESPONDENT*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Respondent's Response in Opposition to Plaintiff's Motion to Compel was served on the below counsel on December 31, 2015, via ECF and email.

Thomas A. Clare (VA Bar No. 39299)
Elizabeth M. Locke (VA Bar No. 71784)
CLARE LOCKE LLP
902 Prince Street
Alexandria, Virginia 22314
Telephone: (202) 628-7400
tom@clarelocke.com
libby@clarelocke.com
*COUNSEL FOR PLAINTIFF NICOLE ERAMO*

*/s/ Philip O'Beirne*
Philip J. O'Beirne (VA Bar No. 71956)