**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**Charlottesville Division**

| | | |
|---|---|---|
| **NICOLE P. ERAMO** | ) | |
| | ) | |
| **Plaintiff** | ) | **Case No. 3:15-mc-00011-GEC** |
| | ) | |
| **v.** | ) | |
| | ) | <u>**Underlying litigation:**</u> |
| **ROLLING STONE LLC,** | ) | *Eramo v. Rolling Stone, LLC, et al.,* |
| **SABRINA RUBIN ERDERLY, and** | ) | **Case No. 3:15-cv-00023-GEC, in the** |
| **WENNER MEDIA LLC,** | ) | **United States District Court for the** |
| | ) | **Western District of Virginia** |
| **Defendants.** | ) | |

**NICOLE ERAMO'S RESPONSE TO NON-PARTY RESPONDENT'S SUPPLEMENTAL
RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL
PRODUCTION**

Pursuant to the Court's direction that the parties to this action may submit additional briefing regarding Movant Nicole Eramo's November 13, 2015 Motion to Compel Nonparty Respondent "Jackie" to Comply with Rule 45 Subpoena [Dkt. 1] ("Motion"), Movant Nicole Eramo hereby files the following response to Nonparty Respondent "Jackie's" December 31, 2015 Supplemental Response in Opposition to Plaintiff's Motion to Compel Production [Dkt. 27] ("Jackie Supp. Resp.").

## INTRODUCTION

Despite all of Movant Nicole Eramo's efforts to be reasonable and accommodating to "Jackie" — including repeatedly attempting to meet and confer regarding the scope of the subpoena, agreeing to identify Jackie by a pseudonym in briefing before the Court (though her identity is already public), and agreeing to withdraw from her Motion most categories of documents sought in the subpoena to Jackie — Jackie and her counsel have refused to budge an

inch from their astonishing position: That Jackie, a grown woman who voluntarily made herself the primary subject of, and chief source for, an inflammatory national magazine article that ruined the lives of many innocent people and has been roundly proven to be demonstrably false, is somehow completely immune from ***any discovery*** in litigation arising out of that article. This is, simply put, an untenable position that finds no support whatsoever in law or logic.

Jackie's latest Supplemental Response makes clear that the real issue here is not a concern with protecting Jackie from having to produce any documents related to an alleged sexual assault. Jackie freely discussed her supposed sexual assault in great detail with *Rolling Stone* magazine, with a UVA alumni magazine and, later, the *Washington Post*, knowing full well that her accounts would be published. She told a dramatically different version of her sexual assault — complete with a named perpetrator who does not in fact exist — to friends and acquaintances at the University of Virginia. And she related still another version to the University and the Charlottesville Police Department — at least until the police attempted to investigate her claims, at which time she withdrew any cooperation. In light of these undisputed facts, it is clear that Jackie's reluctance to participate in discovery is not based on concerns of privacy or about being exposed as an alleged victim of sexual assault. Instead, it is about being exposed as a liar, and there is no blanket immunity from discovery simply because Jackie fears that her own momentous and injurious falsehoods will be revealed.

Dean Eramo's narrowed Motion to Compel is directed solely at highly relevant documents going to the heart of the disputed issues in the defamation case. Namely, were *Rolling Stone's* and Erdely's claims about Jackie's assault, and Dean Eramo's supposed indifference and inaction in response to Jackie's assault, true or false? Did Jackie herself tell others that the article was accurate or false? Do the documents reflecting Jackie's

communications with Dean Eramo and *Rolling Stone* prove or disprove *Rolling Stone's* claims? Did *Rolling Stone* simply invent the claims that Dean Eramo abused Jackie, discouraged her from reporting her supposed sexual assault, called UVA "the rape school," and sought to suppress Jackie's sexual assault to protect the University's reputation — or did Jackie actually tell *Rolling Stone* those things? If Jackie did tell *Rolling Stone* those things, was it negligent and/or reckless for *Rolling Stone* to rely on Jackie as its primary source for these defamatory claims about Dean Eramo considering Jackie's obvious lack of credibility? Did *Rolling Stone* ignore blatant red flags and gaping holes in Jackie's story indicating that she was not telling the truth? And did *Rolling Stone* purposefully avoid uncovering discrepancies in Jackie's account about her supposed gang rape and her subsequent interactions with Dean Eramo?

Nothing in Jackie's Supplemental Filing — which consists primarily of straw man arguments and ad hominem attacks on Dean Eramo and her counsel — meaningfully addresses the fact that Jackie is a central witness in this case, that she put herself in that position of her own volition, and that her documents and testimony are of great importance to the parties' claims and defenses. Although mindful of the sheer amount of briefing already before the Court, Movant submits this response to Jackie's Supplemental Response to address certain inaccurate and misleading claims made in Jackie's Supplemental Filing regarding (1) the defamatory statements *Rolling Stone* made about Dean Eramo; (2) the relevance of the documents sought from Jackie; and (3) the lack of any substantiation whatsoever that Jackie was the victim of a sexual assault on September 28, 2012.

## ARGUMENT

### I. Rolling Stone and Erdely's Incredibly Harmful Claims About Jackie and Dean Eramo.

Jackie devotes much of her Supplemental Response to the irrelevant and misleading exercise of attempting to downplay the accusations about Dean Eramo that Defendants *Rolling Stone* and Sabrina Rubin Erdely made in the article "A Rape on Campus" and in subsequent media appearances. (*See* Jackie Supp. Resp. at 3-5, 11-14.) Jackie also continues to argue that the documents Dean Eramo seeks from Jackie are not relevant to the claims and factual allegations in the defamation Complaint. Although Dean Eramo discussed the article and its defamatory claims in her original Memorandum, it bears repeating just how hurtful and damaging Jackie's fabrications and *Rolling Stone's* defamatory claims were to Dean Eramo and countless others in the University of Virginia community.

The Article "A Rape on Campus," published in November 2014, claims that Jackie was the victim of a violent, three-hour gang-rape at the Phi Kappa Psi fraternity at the University of Virginia on September 28, 2012. (May 12, 2015 Complaint [Dkt. 2-2] ¶¶ 3-5, 45-71.) The gang rape was supposedly spearheaded by an upperclassman that Jackie met while working as a lifeguard at the University pool. (*Id*. ¶ 47.) The article claims that Jackie reported the details of this gang rape and its location to Dean Eramo, and that Dean Eramo did nothing to act on this information. (*Id*. ¶¶ 54-71.) The article claims at various points that Dean Eramo abused Jackie, that Dean Eramo discouraged Jackie from sharing her story, that Dean Eramo told Jackie that UVA suppresses rape statistics because nobody would want to send their daughter to "the rape school," that Dean Eramo took no action in response to Jackie's claim of sexual assault, and that Dean Eramo intentionally coddled Jackie into not reporting her sexual assault. (*Id*. ¶¶ 54-71, 208-212.) Some of these statements in the article, such as the claim that Dean Eramo called

UVA "the rape school" and "discouraged" Jackie from reporting her assault, purport to be direct quotes or paraphrasing of statements Jackie made to *Rolling Stone*.[1]

In related media appearances designed to capitalize on the publicity surrounding the article, Defendant Erdely also claimed that Dean Eramo "brushed off" Jackie, that Dean Eramo "did nothing" in response to Jackie's supposed sexual assault, that Dean Eramo sought to "suppress" Jackie's story, that Dean Eramo did not report Jackie's claimed assault to the police, and that Dean Eramo "discouraged" Jackie from reporting her sexual assault. (*Id.* ¶¶ 238-267.) Finally, in a written press release, *Rolling Stone* claimed that Dean Eramo met Jackie's allegations with "indifference" and "chose not to act on [Jackie's] allegations in any way." (*Id.* ¶¶ 268-270.)[2]

The article created a media firestorm, and *Rolling Stone's* decision to cast Dean Eramo as a villain who intentionally suppressed Jackie's rape allegations to protect UVA's reputation caused Dean Eramo to become the target of public scorn, ridicule, and downright threatening attacks on her character. Dean Eramo received emails from outraged members of the public that read the article calling her, among other invectives, a "rape apologist," a "vile worthless creature," a "disgusting, worthless piece of trash," a "piece of shit," a "disgusting individual," an "unspeakably horrible" person who is "complicit" in "the culture of rape at UVA," and a "fat hypocrite" who should "burn in hell." (*Id.* ¶ 203.)

---

[1]  For example, the article defames Dean Eramo by featuring a fabricated quote ("Because nobody wants to send their daughter to the rape school") falsely attributed to her by Jackie, the sole source for the quote. To hammer the point home, *Rolling Stone* states that Dean Eramo delivered this quote to Jackie "wryly."

[2]  Jackie's Supplemental Response argues that only the Complaint counts based on statements in the article itself are germane to the question of the relevance of Jackie's documents. But Jackie completely ignores that Dean Eramo's Complaint also bring claims based on statements *Rolling Stone* and Erdely made after the article was published in media appearances. Jackie's communications with *Rolling Stone* and Erdely will also demonstrate why these post-publication media statements were not only false, but also that *Rolling Stone* and Erdely acted with actual malice in making them. *Compare* Jackie Supplemental Response at 3-4, *with* Plaintiff's Complaint at 64-74 (Counts Three-Six).

5

Once responsible journalists and law enforcement pressure tested *Rolling Stone's* story and Jackie's claims, the entire article was proven to be a lie. It emerged that, prior to the supposed assault, Jackie had told three friends that she had an upcoming date on the evening of September 28, 2012 with a student named "Haven Monahan," who Jackie claimed was a handsome junior in her chemistry class — not a fellow lifeguard as *Rolling Stone* claimed. (*Id.* ¶ 93.) She even encouraged her friends to exchange text messages with a phone number that she claimed belonged to Haven Monahan. (*Id.*) When they did, "Haven" would repeatedly gush about how "smart" and "hot" Jackie was. (*Id.*) On the night of September 28, 2012, Jackie told her friends that after her date with Haven, he forced her to perform oral sex on a group of men — a horrible allegation to be sure, but one that is markedly different from the detailed, violent, and sustained gang rape portrayed in the *Rolling Stone* article. (*Id.* ¶ 89.)

After the article was published, the Charlottesville Police Department released a report debunking *Rolling Stone* and Jackie's claims. (Mar. 23, 2015 Charlottesville Police Department's Investigation into an Alleged Sexual Assault as Depicted in Rolling Stone Magazine Article dated November 19, 2014 [Dkt. 11-1] ("CPD Report").) The report noted that Jackie's claims about the date and location of the assault were provably false. (*Id.*) It found that Jackie had apparently fabricated a later incident in which she claimed she was physically assaulted and injured by fraternity members for speaking out about her sexual assault. (*Id.* at 1-2.) It determined that those who saw Jackie immediately following the purported assault did not observe any of the horrific injuries graphically detailed by *Rolling Stone*. (*Id.* at 4.) It further noted that there never was any UVA student by the name of "Haven Monahan," and that Jackie's description of the attack's supposed ringleader, including his name, appearance, fraternity and place of employment, did not match any real individual that the police could locate. (*Id.* at 5.) It

6

found that the picture Jackie showed friends of "Haven Monahan" at the time actually depicted an individual who did not even know Jackie. (*Id.*) Convincing evidence would later emerge suggesting that Jackie originally fabricated both "Haven Monahan" and the claimed assault in a bid to win the affections and sympathy of another man she was romantically interested in, but who did not share her feelings.[3]

*Rolling Stone's* claims about Dean Eramo's actions were revealed to be completely false as well. Both the Charlottesville Police and the Columbia Graduate School of Journalism review found that, upon being called to task at UVA for poor grades, Jackie revived the sexual assault tale and relayed a truncated version to Dean Eramo — though Jackie refused to provide any information about where it occurred or who was responsible. (CPD Report at 1.) Far from doing nothing or seeking to suppress Jackie's allegations, Dean Eramo in fact immediately tried to assist Jackie in holding her supposed attackers accountable, repeatedly contacted Jackie thereafter, and actively sought to encourage Jackie to make a formal report of her assault to the University and to the police. Contrary to the claims in the article, Dean Eramo in fact arranged meetings with Jackie and police detectives on multiple occasions, but Jackie balked at cooperating when she realized that the police would want to investigate the factual bases of her claims. (*Id.* at 1-2.) The false claims had a devastating effect on Dean Eramo's hard-earned reputation as a fierce advocate for victims of domestic and sexual abuse, and also smeared other innocent members of the University of Virginia community.

## II.  Truth, Falsity, and Source Credibility Are Key Issues in the Defamation Action.

In continuing to argue that Jackie's documents and communications have no relevance to the defamation action because Jackie herself has not been sued, Jackie's Supplemental Response

---

[3]  *See, e.g.,* Chuck Ross, *University of Virginia Student's Catfishing Scheme Revealed*, The Daily Caller (Dec. 16, 2014), *available at* http://dailycaller.com/2014/12/16/university-of-virginia-students-catfishing-scheme-revealed/.

ignores the relevance of the requested documents to the factual allegations, claims, and defenses asserted by both parties to the defamation action.[4] Dean Eramo must of course prove that *Rolling Stone* and Erdely's claims about Dean Eramo are false, and *Rolling Stone* will contend that they are true or substantially true. (*See generally* July 26, 2015 Answer, *Eramo v. Rolling Stone, LLC*, Case No. 3:15-cv-00023-GEC (United Stated District Court for the Western District.) [Dkt. 27]).) Thus, evidence tending to show that Dean Eramo did not act with indifference to Jackie's claims and did not seek to suppress Jackie's reported assault is highly relevant to the issue of falsity. More fundamentally, evidence demonstrating that the supposed gang rape at Phi Kappa Psi ***did not happen*** is also highly relevant, because it tends to demonstrate that *Rolling Stone* falsely accused Dean Eramo of trying to cover up and suppress an incident that did not even occur.

Moreover, evidence that Jackie fabricated the tale of sexual assault she told to *Rolling Stone*, as well as the details of her subsequent interactions with Dean Eramo, is highly relevant to the issue of Jackie's credibility as a source for the magazine. *Rolling Stone's* defense will be that it did not simply invent the gang rape story or the defamatory allegations about Dean Eramo, ***but instead published what Jackie told the magazine***. When a publication relies on a source in publishing a false story, the key issues in determining whether the publication acted with negligence or actual malice are whether the publication failed to investigate the source's claims, whether the publication ignored contrary evidence, and whether the publication knew or should

---

[4] Jackie's counsel strangely accuses Dean Eramo of "shifting" her claims and allegations for purposes of the Motion to Compel. (Jackie Supp. Resp. at 3-5.) This is an odd accusation, considering that Dean Eramo's original Memorandum contained a lengthy factual background section that cited and tied every single relevant fact to an allegation in the Complaint. (*See* Nov. 13, 2015 Nicole Eramo's Mem. of Law in Supp. of her Mot. to Compel Nonparty Respondent Jackie's Compliance with Rule 45 Subpoena [Dkt. 2] at 4-6.)

Case 3:15-mc-00011-GEC   Document 29   Filed 01/06/16   Page 8 of 25   Pageid#: 559

have known that the source was not credible.[5]  *See, e.g., Wells v. Liddy*, 37 Fed. App'x 53, 61 (4th Cir. 2002) ("A reasonable jury could conclude further that sole reliance on such an unreliable source violates Virginia's [defamation] negligence standard.…"); *Pep v. Newsweek, Inc.*, 553 F. Supp. 1000, 1002-03 (S.D.N.Y. 1983) ("Facts such as failure to investigate, or reliance on a questionable source are relevant to the [actual malice] determination . . . ."). The subpoena demands that are the subject of this Motion are narrowly tailored to discover precisely this type of evidence from Jackie.

Jackie's Supplemental Response fails to dispute that Jackie's documents showing her communications with *Rolling Stone*, her interactions with Dean Eramo and UVA, her own contemporary statements about the veracity of the article and its portrayal of Dean Eramo, and the fact that she herself invented and posed as her alleged perpetrator, are highly relevant to the issues of truth, falsity, and Jackie's credibility as a source. Unless *Rolling Stone* is willing to stipulate that Jackie never told *Rolling Stone* **any** information supporting the defamatory statements the Defendants made about Dean Eramo, that the statements *Rolling Stone* made about Dean Eramo were in fact false, and that Jackie was a subjectively unreliable source on which to base the article, then discovery of this information must be had from Jackie.

### III. Dean Eramo's Motion to Compel Seeks Only Highly Relevant Documents.

As limited by her Supplemental Filing, Dean Eramo's Motion to Compel seeks to compel the production of **only** the following documents from Jackie:

- Jackie's communications with the *Rolling Stone* reporter, Sabrina Rubin Erdely (Demand Nos. 1, 18);

---

[5]  By way of example, Jackie's former friends that met with her the night of her alleged assault and exchanged texts with the fake "Haven Monahan" have repeatedly stated that, if *Rolling Stone* had bothered to contact them prior to publication, they would have shared these communications — and their suspicions that Jackie herself was "Haven Monahan" — with *Rolling Stone*.  *See* Sheila Coronel, et al., *Rolling Stone and UVA: The Columbia University Graduate School of Journalism Report*, Rolling Stone (Apr. 5, 2015), *available at* http://www.rollingstone.com/culture/features/a-rape-on-campus-what-went-wrong-20150405.

- Jackie's communications with any other person from *Rolling Stone* magazine (Demand Nos. 2, 18);

- Jackie's relevant communications with Nicole Eramo (Demand No. 6);

- Jackie's relevant communications with any other University of Virginia personnel (Demand No. 12);

- Any communications Jackie authored while using the pseudonym "Haven Monahan" or in which Jackie references an individual named "Haven Monahan" (Demand No. 15);

- Jackie's communications with others regarding the *Rolling Stone* article that is the subject of the defamation suit (Demand No. 16); and

- Any public (or formerly public) internet postings Jackie made regarding her alleged sexual assault (Demand No. 17).

(*See* July 27, 2015 Subpoena to "Jackie" [Dkt. 2-1]); (Dec. 29, 2015 Nicole Eramo's Supp. Filing in Supp. of Mot. to Compel Nonparty Respondent "Jackie" to Comply with Rule 45 Subpoena [Dkt. 26].)  Jackie's Supplemental Response essentially ignores this narrowing of the subpoena, and continues to argue about the supposed irrelevance and overbreadth of document categories that are not the subject of Dean Eramo's Motion to Compel.  (*See* Jackie Supp. Resp. at 14-16, 22-23.)  This is because each of the above requests is narrowly tailored, not unreasonably intrusive, and seeks only documents highly relevant to the defamation action. Jackie has no basis for refusing to produce them, and cannot meet her burden of justifying her refusal without demonstrating why the specific requests at issue are irrelevant, privileged or otherwise objectionable.  *See Castle v. Jallah*, 142 F.R.D. 618, 620 (E.D. Va. 1992) (the burden is on the nonparty resisting discovery to show why discovery should not be allowed).

For example, Jackie's communications with Sabrina Rubin Erdely and *Rolling Stone* are plainly relevant to the issues of falsity, Jackie's credibility, negligence, and actual malice.  Dean Eramo is entitled to receive a full set of these communications from Jackie, especially including those communications that may not also be in the possession of *Rolling Stone* — such as

voicemails, letters, text messages, and emails. Jackie's communications with Dean Eramo and the University of Virginia regarding her supposed assault and her subsequent interactions with Dean Eramo are highly relevant because they will demonstrate that, contrary to the assertions in the article, Dean Eramo did not discourage Jackie from reporting or seek to suppress her assault, but instead actively encouraged her to hold the supposed perpetrators accountable and to allow the police to investigate her claims.

Jackie's communications about the article itself are also highly relevant to both parties' claims and defenses because Jackie is known to have spoken to multiple media outlets and made multiple statements bearing on the truth or falsity of the article generally, and its portrayal of Dean Eramo specifically. By way of example, Jackie acknowledges in her Supplemental Response that she penned an open letter to the *Cavalier Daily* newspaper stating that the article's depiction of Dean Eramo was false and inaccurate. (*See* Nov. 24, 2015 Letter: Advocating for Dean Eramo, *The Cavalier Daily* [Dkt. 27-1]). Additionally, in a text message exchange with UVA student Ryan Duffin shortly after the article was published, Jackie stated that Sabrina Rubin Erdely "twisted" and "manipulated" the story, and that *Rolling Stone* "misrepresented" Dean Eramo's actions:

> "Yes, she definitely did her own thing and at the end I had absolutely no control over what was published. It was the shittiest situation ever. I spoke with a reporter from the post explaining how Sabrina took a vast majority of what I said and twisted it and ultimately manipulated my assault to get something sensational. I told him you guys couldn't have had any idea what had happened because I was crying so hard I couldn't explain it other than ""something bad happened and they made me do things"" and I told him that she misrepresented you and Dean Eramo. "

Ex. A.[6] It is beyond dispute that statements by the primary source of the article — indeed, the sole source for the article's claims concerning Dean Eramo's treatment of Jackie — bearing on

---

[6] Copies of Jackie's text messages with Mr. Duffin, as well as Mr. Duffin's text messages with Jackie posing as "Haven Monahan," were obtained by subpoena to Mr. Duffin.

the truth or falsity of the article's portrayal of Dean Eramo are highly relevant to both falsity and actual malice.[7]

Jackie's Supplemental Response largely argues about document demands that are not the subject of the pending Motion to Compel, and rehashes untenable privilege arguments that are not supported by any authority. For example, Jackie claims that Dean Eramo cannot herself unilaterally disclose certain communications with Jackie because she "counseled" Jackie, but then fails to identify any statute, case law, or other authority prohibiting enforcement of a valid subpoena **to Jackie** for those communications in ongoing litigation. (*See* Jackie Supp. Resp. at 20-21.) She also completely ignores the dispositive argument that any potential privilege that even arguably would have applied to communications between Dean Eramo and Jackie was waived by Jackie herself when she voluntarily shared copies of some of these communications with *Rolling Stone* for purposes of the defamatory article. *See, e.g., U.S. v. Bolander*, 722 F.3d 199, 223 (4th Cir. 2013) (a patient waives the patient-psychotherapist privilege by voluntarily disclosing the substance of therapy sessions to third parties).

Jackie also maintains misplaced reliance on Federal Rule of Evidence 412 and her supposed status as a victim of sexual assault as a complete bar to all discovery, yet she acknowledges that Rule 412 by its plain terms only bars admission of evidence regarding evidence of "other" alleged sexual conduct — **not** the supposed sexual conduct directly at issue in the litigation. (*See* Jackie Supp. Resp. at 26.) She also acknowledges that the comments to Rule 412 explain that the Rule does not prohibit discovery or admission of evidence regarding

---

[7] The request for formerly public internet postings about the alleged assault is directed at pre-publication evidence that may have been available to *Rolling Stone* that would have called into question the credibility of Jackie's gang rape tale. For example, Jackie is known to have had a public Facebook account that she removed at some point, rendering those postings available to Jackie and *Rolling Stone* prior to publication, but no longer available to Plaintiff.

the sexual conduct that is "intrinsic" to the claims in the case, much less discovery aimed at defamatory statements about sexual conduct. Rule 412 Advisory Committee Notes (1994); *see also Truong v. Smith*, 183 F.R.D. 273, 274 (D. Colo. 1998) ("[R]ule 412 bars the admission of evidence 'offered to prove that any alleged victim engaged in other sexual behavior.' 'Sexual behavior' includes all activities, ***other than those 'intrinsic' to the alleged misconduct***, that involve sexual intercourse or sexual contact . . . .") (citing references omitted) (emphasis added); (Jackie Supp. Resp. at 26-27). And most importantly, she simply does not ***anywhere*** proffer, allege, or represent to the Court that she was in fact the victim of the September 28, 2012 sexual assault recounted in the *Rolling Stone* article; namely, the Phi Psi gang rape story that she related to *Rolling Stone*, and the different stories that she told her friends and Dean Eramo. What Jackie is refusing to produce is not evidence of a sexual assault, but evidence that she lied. There is no immunity from discovery on this basis.

## IV. There is no Factual Basis Whatsoever for the Claim that Jackie is an Alleged Victim of the Supposed Sexual Assault at Issue.

Jackie's attorneys repeatedly argue in briefing that she was a victim of an unspecified sexual assault at some unspecified time and at some unspecified place, and that this bald claim grants her complete immunity from discovery based on that status. However, nowhere in their 56 pages of briefing on this Motion to Compel do Jackie's attorneys even ***once*** claim that she was in fact the victim of a group sexual assault on September 28, 2012, whether at the Phi Kappa Psi fraternity or anywhere else. Nowhere do they claim or allege that the incident she reported to *Rolling Stone,* or the incident she related to UVA officials and other UVA students, actually occurred. Nowhere do they dispute the findings of the Charlottesville Police Department that most everything Jackie has said to anyone about the night of September 28, 2012, was found to be a lie — including the name of her supposed attacker, where she met her supposed attacker,

what fraternity her supposed attacker belonged to, the very existence of her supposed attacker, the photographs she provided to other students of her supposed attacker, the location of the supposed assault, the description of the supposed assault, the time of day it occurred, her supposed injuries, the location where she met friends following the supposed assault, the details of the supposed assault she related to those friends, the details of the supposed assault she related to *Rolling Stone*, and the details of the supposed assault she related to UVA.  (*See generally* CPD Report.)    The bottom line is that, after thoroughly investigating Jackie's claims, the Charlottesville Police Department flatly determined that there was "no substantive basis of fact to conclude" that the supposed sexual assault occurred at all.  (*Id.* at 6.)

Significantly, there is also no factual basis whatsoever ***in the record before the Court*** that would allow the Court to conclude that Jackie is even an "alleged" victim of sexual assault, let alone an actual victim.  Jackie's attorneys offer only conclusory and vague insinuations about her victim status without even the barest attempt to point to a single shred of factual evidence, or even to identify ***what supposed sexual assault they are referring to***.    There is no allegation.  There is no alleged perpetrator.  There is no alleged incident.  There is no alleged date, time, or location of the supposed assault.    There is no ongoing police investigation into any alleged assault.  In fact, acting on advice from her attorney, Jackie declined to answer any questions or make any statement to the police department investigating her supposed assault before the police concluded that there was no basis in fact to believe it occurred — obviously out of concern that saying anything to the police about the fabricated assault could expose her to legal liability for making a false statement.  (*Id.* at 3.)    And despite multiple opportunities in filings before the Eastern District of Virginia and now the Western District, Jackie's attorneys have pointedly declined to present an affidavit, declaration, or proffer from Jackie factually attesting to her

status as an "alleged victim." There is **nothing** but Jackie's attorneys stating in argument that she is a "victim." The position taken here by Jackie and her attorneys would allow any individual to resist participation in any civil discovery simply by making a completely unsubstantiated attorney argument that the individual was at some unknown date and time a victim of some kind of sexual assault. That is of course not the law, and Jackie's Supplemental Response makes no effort to demonstrate that it is.

Moreover, the nebulous attorney argument that Jackie is a past victim of an unspecified sexual assault is irrelevant to the present Motion because the remaining categories of document demands that are the subject of the Motion concern **only** Jackie's claims to *Rolling Stone* and UVA about the supposed sexual assault on September 28, 2012. **Nowhere** have Jackie's attorneys claimed or alleged this **this** sexual assault actually occurred. Even if Jackie was in fact sexually assaulted, by a real person, at some other place and time in her life, that is irrelevant to the present Motion and the documents at issue. Plaintiff has no interest in any other supposed sexual assaults other than the indisputably false claims that Jackie told UVA and *Rolling Stone* about September 28, 2012, and the Motion to Compel does not seek documents relating to any other supposed incidents of sexual assault — real or imagined.

Finally, it bears noting that in all 56 pages of Respondent's briefing on Movant's Motion to Compel, not once has Jackie ever addressed or referenced document demand Number 15, which requests all communications Jackie authored under the pseudonym "Haven Monahan," or communications in which Jackie referred to a "Haven Monahan." (Subpoena at 5.). This is not an oversight, but rather a tacit acknowledgment that the account of a sexual assault that Jackie told to *Rolling Stone* was a complete fabrication. "Haven Monahan" was the name Jackie originally gave to friends as her date for the evening of September 28, 2012, and, later, as the

supposed ringleader of her gang rape. (CPD Report at 4.)   But as the Charlottesville Police Department found after a lengthy investigation, "Haven Monahan" does not exist.  Rather, all available evidence demonstrates that "Haven Monahan" was a fake suitor created by Jackie in a strange bid to earn the affections of a student named Ryan Duffin that Jackie was romantically interested in.  Jackie provided "Haven's" phone numbers to Mr. Duffin prior to the date of her supposed assault, and encouraged Duffin to exchange texts with "Haven" while pretending to be a girl interested in dating him.[8]  When Duffin did so, "Haven" quite notably only wanted to talk about Jackie, how wonderful she was, how interested in Mr. Duffin she was, and what a fool Duffin was for rejecting her romantic advances:

> *Ryan Duffin to Haven Monahan*: (Wed Sep 05 00:31:04 EDT 2012)
> **yeah, im a first year. I really wish I could see you on Friday!!!**
>
> *Haven Monahan to Ryan Duffin*: (Wed Sep 05 00:32:28 EDT 2012)
> **Yea I would but there's this girl. You probably know her jackie** redacted **? She was in ourchem class. She lives in gooch.**

*      *      *      *      *

---

[8] The "phone numbers" for "Haven Monahan" that Jackie provided to Mr. Duffin were not actually associated with a cell phone, but rather are dummy numbers obtained from certain internet sites that allow a user to text with another phone from a computer or iPad device.  This contrivance allowed Jackie, posing as "Haven Monahan," to text with Mr. Duffin in a way that would lead him to believe he was texting with a real person using a cell phone.  *See* Peter Jacobs, *There's More Bizarre Evidence That UVA Student Jackie's Alleged Rapist Doesn't Exist*, Business Insider (Dec. 17, 2014), *available at* http://www.businessinsider.com/theres-more-bizarre-evidence-that-uva-student-jackies-alleged-rapist-doesnt-exist-2014-12.

*Haven Monahan to Ryan Duffin*: (Wed Sep 05 00:37:21 EDT 2012)
**Since your a first year girl can you give me some advice?**

*Ryan Duffin to Haven Monahan*: (Wed Sep 05 00:37:37 EDT 2012)
**Advice? Sure!!!!!**

*Haven Monahan to Ryan Duffin*: (Wed Sep 05 00:41:36 EDT 2012)
**(1/4) Ok Jackie is this super smart hot first year and I tried to talk to her on the first day of class but she blew me off so I thought it was no biggie.**

*Haven Monahan to Ryan Duffin*: (Wed Sep 05 00:41:41 EDT 2012)
**(2/4) But then I caught her listenin to safetysuit and coheed and cambria which are 2 of my fav bands so I new I needed to meet her but she was tellin her**

*Haven Monahan to Ryan Duffin*: (Wed Sep 05 00:41:46 EDT 2012)
**(3/4) friends that she was volunteerin at the spca for the rest of the day and she walked away. I keep tryna talk to her nd she keeps ignoring me like she**

*Haven Monahan to Ryan Duffin*: (Wed Sep 05 00:41:51 EDT 2012)
**(4/4) dosnt realize im a 3rd year or some bs**

*   *   *   *   *

*Haven Monahan to Ryan Duffin*: (Wed Sep 05 00:57:44 EDT 2012)
**(1/2) I will. HOw can she not Want me? wtf ? She cant turn me down fro some nerd 1st yr.**

**She said this kid is smart and funny and worth it but I told her if**

*Haven Monahan to Ryan Duffin*: (Wed Sep 05 00:57:49 EDT 2012)
**(2/2) he said no to fuck it Nd move onto better things like me**

(Ex. B.) When these fake texts did not have the desired effect of causing Duffin to be jealous and romantically interested in Jackie, "Haven" upped the ante, telling Duffin that Jackie was dying of a terminal illness in a further bid to arouse Mr. Duffin's sympathies and make him feel guilty for rejecting Jackie's advances:

*Ryan Duffin to Haven Monahan*: (Thu Sep 13 22:36:12 EDT 2012)
**Take my advice on this. Move on. She's not interested.**

*Haven Monahan to Ryan Duffin*: (Thu Sep 13 22:38:59 EDT 2012)
**01/02:No fuck you. It takes a heartless fucken asshole to mess with someone whos sick. If she died tomorrow uoud be the fuker who broke her heart. Shes special**

*Haven Monahan to Ryan Duffin*: (Thu Sep 13 22:39:04 EDT 2012)

**02/02:**and thats why I'm going after her. No one understands life like her

*Ryan Duffin to Haven Monahan:* (Thu Sep 13 22:40:41 EDT 2012)
She just had a cold, bro. A cold that I caught.

*Haven Monahan to Ryan Duffin:* (Thu Sep 13 22:42:25 EDT 2012)
**01/02:**Do you even know? Shes got lupus shes really sick dude why do you think shes on so many fucken meds I met her in Chem but I volunteer at the clinic thats

*Haven Monahan to Ryan Duffin:* (Thu Sep 13 22:42:34 EDT 2012)
**02/02:**how I got to know her I thot you were her friend

*Haven Monahan to Ryan Duffin:* (Thu Sep 13 22:44:38 EDT 2012)
Jackie's sick but it makes her this kickass person shes phenomenal and your a fuck so leave her the fuck alone. Se doesn't need people like you in her life

(Ex. C.)  Separately, Jackie — all the while encouraging Duffin to continue texting with

"Haven" — doubled down on the deception:

*Ryan Duffin to Jackie* redacted: (Thu Sep 13 23:59:40 EDT 2012)
Do you know Haven well?

*Jackie* redacted *to Ryan Duffin:* (Fri Sep 14 00:02:17 EDT 2012)
Uhm I guess? Idk not like I'd feel compelled to give him a kidney or anything

*Ryan Duffin to Jackie* redacted (Fri Sep 14 00:04:00 EDT 2012)
But you know him more than you let on.

*Jackie* redacted *to Ryan Duffin:* (Fri Sep 14 00:05:05 EDT 2012)
No not really. I didn't lie about him. I don't lie. What are you getting at?

*Ryan Duffin to Jackie* redacted: (Fri Sep 14 00:06:14 EDT 2012)
I just had the impression that you saw him once in chemistry and that was it. But you know him better than that, so it makes him a bit less creepy. I'm not getting at anything; I'm just curious.

*Jackie* redacted *to Ryan Duffin:* (Fri Sep 14 00:10:12 EDT 2012)
I saw him once in chemistry and once again at the student health center. It's not any less creepy because both times I barely said two words to him and he imagined some strange relationship between us that clearly doesn't exist. Listen Ryan, I wasn't mad at you tonight.

I was mad at him. He had a confidentiality clause that he signed as a student employee at the health center and it's not his place to tell other people my problems. It's wrong and if I wanted people to know wouldn't I tell them?

*Ryan Duffin to Jackie* redacted: (Fri Sep 14 00:12:10 EDT 2012)
If you don't want people to know, take my word that I won't tell anybody. Maybe I just don't understand the disease, but to me, it's not a big deal.

*Ryan Duffin to Jackie* redacted: (Fri Sep 14 00:12:41 EDT 2012)
How extensive is the clause? Because he just disclosed your will to me.

*Jackie* redacted *to Ryan Duffin*: (Fri Sep 14 00:13:01 EDT 2012)
Ryan, it means I'm dying.

*Ryan Duffin to Jackie* redacted: (Fri Sep 14 00:13:47 EDT 2012)
Holy shit. I... I had no idea. Do you want to talk?

*Jackie* redacted *to Ryan Duffin*: (Fri Sep 14 00:15:15 EDT 2012)
It's a big deal because people treat you differently, like you're about to break at any given moment. And it's not cause they like you and it's not cause they care...it's because you're perishable and that scares them

*Ryan Duffin to Jackie* redacted (Fri Sep 14 00:17:37 EDT 2012)
I won't tell anybody. You have my word on that. Haven, on the other hand...

(Ex. D.)  Next, "Haven" began telling Mr. Duffin about showering Jackie with gifts:

*Haven Monahan to Ryan Duffin*: (Sun Sep 16 23:41:22 EDT 2012)
I sent her more flowers but she never texted me so idk if she got them

*Ryan Duffin to Haven Monahan*: (Sun Sep 16 23:41:45 EDT 2012)
Well, that sounds nice anyway.

*Haven Monahan to Ryan Duffin*: (Sun Sep 16 23:43:15 EDT 2012)
Yea iv spent $300 on flowers and chocolate but shes been with that Kyle guy now that shes over you and idk what he did with her. He took her somewhere

(Ex. C.)  Jackie simultaneously went out of her way to encourage Mr. Duffin to believe that his competition, "Haven," was busy trying to woo her:

*Jackie* redacted *to Ryan Duffin*: (Tue Sep 11 10:47:12 EDT 2012)
Soooo not to be awkward at all but it probably will be because you probably didn't but did you send me flowers? I'm guessing no but I'd rather it be you than who I think it is even though I'm about 99% positive it wasn't you but I'm making sure

*Jackie* redacted *to Ryan Duffin*: (Tue Sep 11 10:47:41 EDT 2012)
"Haha never mind then. Haven's ""did you get the flowers?"" text confirmed everything. Great. Sorry to bother you!!"

*Ryan Duffin to Jackie* redacted: (Tue Sep 11 11:55:59 EDT 2012)
Oh. I just saw this text now, sorry for not responding earlier. Haven is a creepy one.

(Ex. D.)  Finally, "Haven" began telling Mr. Duffin about his plan to take Jackie on a date to a fancy restaurant in Charlottesville on the night of September 28, the date of the supposed sexual assault:

> *Haven Monahan to Ryan Duffin:* (Fri Sep 21 21:53:06 EDT 2012)
> Where should I take her out?  She said 5 guys or subway but I was thinking about the old mill room at boars head inn, do you think she'll like it?
>
> *Haven Monahan to Ryan Duffin:* (Fri Sep 21 21:55:39 EDT 2012)
> Or foressts at keswick hall...which one do u think she'll like more?
>
> *Ryan Duffin to Haven Monahan:* (Fri Sep 21 21:56:14 EDT 2012)
> I don't know where those places are, actually.  I'm sure she'd like anything.

(Ex. C.)

When none of "Haven's" efforts had the desired effect, Jackie finally called Mr. Duffin on the night of September 28, 2012, claiming that her date with "Haven" had ended in a sexual assault, and asking Mr. Duffin to spend the night with her to comfort her.[9]  Stranger still, even after he supposedly orchestrated a violent gang rape of Jackie, "Haven" continued to communicate with Mr. Duffin, purporting  to forward to Mr. Duffin emails authored by Jackie in which she extolled Mr. Duffin's virtues.  (Ex. E.)  Only after Mr. Duffin questioned whether "Haven Monahan" was a real person and demanded to speak to him on the telephone did the communications finally stop.   (Ex. C.)   At that point Mr. Duffin confronted Jackie about evidence that "Haven" was not a real person.  Jackie — pretending to cut and paste a text from "Haven" to Ryan — starts:

---

[9]  Margaret Hartmann, *Everything We Know About the UVA Rape Case [Updated],* New York Magazine (July 30, 2015), *available at* http://nymag.com/daily/intelligencer/2014/12/everything-we-know-uva-rape-case.html.

*Jackie* redacted *to Ryan Duffin*: (Sun Oct 07 19:36:13 EDT 2012)
**I couldnt really hear him but he thougt u made me up and ur a psycho**

*Jackie* redacted *to Ryan Duffin*: (Sun Oct 07 19:37:19 EDT 2012)
**Really Ryan? Wow.**

*Ryan Duffin to Jackie* redacted: (Sun Oct 07 19:59:44 EDT 2012)
**He thought I made you up?**

*Ryan Duffin to Jackie* redacted: (Sun Oct 07 20:00:17 EDT 2012)
**Oh. That's a Haven text. I see.**

*Jackie* redacted *to Ryan Duffin*: (Sun Oct 07 20:01:19 EDT 2012)
**Yep.**

(Ex. D.) Mr. Duffin then explains that Jackie's fabrication of "Haven" is the only possible explanation that makes any sense:

*Ryan Duffin to Jackie* redacted: (Sun Oct 07 20:03:27 EDT 2012)
**Nick and I had to consider that a possibility. It was a possibility that could make sense. We could find no evidence that Haven ever was at UVA. People Search turned up nothing. Even though he dropped out, he should still show up on it. We had more reasons. It was an answer that would actually have worked, but we wanted to be sure before we brought it up to you. I wasn't planning on Haven going and telling you, because I knew that you'd react like this.**

*Jackie* redacted *to Ryan Duffin*: (Sun Oct 07 20:05:55 EDT 2012)
**Our friendship is over Ryan**

*Ryan Duffin to Jackie* redacted (Sun Oct 07 20:06:40 EDT 2012)
**"Like I said on Thursday. I understand completely.**

**But I still don't really understand what happened here. "**

(*Id.*)

The reason that Jackie and her attorneys have very conspicuously avoided referencing or addressing the demand that Jackie produce any communications she authored under the pseudonym "Haven Monahan" is that to admit the existence of such documents would be to put the lie to any claim that Jackie was the victim of an alleged sexual assault on September 28, 2012, and would require Jackie to admit that her concern is not being outed as a victim of sexual assault, but rather being exposed as a serial liar who invented people, events, and text messages. All available evidence suggests that "Haven Monahan" was a figment of Jackie's imagination,

created to try to make Mr. Duffin jealous in a failed bid to win his attention. Jackie then revived the false story when it suited her after being called to task for failing grades. There was no date with "Haven" on September 28, 2012, and there was no sexual assault orchestrated by "Haven" on September 28, 2012. The story was a lie when she first told it in 2012, and it was no more true when *Rolling Stone* recklessly published the tale in 2014. Jackie simply has no legal basis to claim complete immunity from discovery regarding her gravely consequential fabrications.[10]

## CONCLUSION

Aside from the parties to the litigation, Jackie is by any estimation the most central witness in the case. Her fabricated tale of sexual assault, her interactions with Dean Eramo, her statements to *Rolling Stone*, and her credibility (or lack thereof) as a primary source for *Rolling Stone's* article and false claims about Dean Eramo are the key issues in the defamation case, and Jackie's documents and testimony are highly relevant not only to Dean Eramo's claims, but to *Rolling Stone's* defenses to those claims. In 56 pages of briefing, Jackie has yet to identify a single case, statute, or rule of procedure that immunizes her from all civil discovery generally, or that proscribes even a single one of the specific document demands in the subpoena.

For the foregoing reasons, Nicole Eramo, Plaintiff in the case of *Eramo v. Rolling Stone LLC, et al.*, No. 3:15-cv-00023-GEC, currently pending in the United States District Court for

---

[10] Similarly, Jackie's counsels' claim that Jackie is somehow immune from a deposition in this case is equally untenable. (*See* Jackie Supp. Resp. at 9-10.) The issue is not before the Court because no deposition subpoena has yet been issued as Dean Eramo is still, many months later, awaiting the production of Jackie's documents. Counsel for Dean Eramo requested that counsel for Jackie provide her available deposition dates — as the close of discovery is fast approaching — but this was merely a scheduling courtesy extended to counsel and not a formal subpoena for a deposition. Jackie's counsel has turned this common courtesy on its head by claiming indignation at the notion that the chief source for the article would be subject to a deposition, and by attempting to use the scheduling request as a means to further delay a hearing on the Motion to Compel. Recognizing that Jackie's counsel was attempting to seize on this courtesy as a means for further delay, Dean Eramo's counsel made abundantly clear that no such further delay would be permitted, and that a deposition subpoena will be forthcoming after Jackie's documents have been produced. To be perfectly clear regarding Plaintiff's position, Jackie is a critical witness who absolutely must be deposed.

the Western District of Virginia, respectfully requests that the Court grant her Motion to Compel

Nonparty Respondent Jackie to Comply with Rule 45 Subpoena.


Dated: January 6, 2016                    Respectfully submitted,


                                          By: */s/ Thomas A. Clare*_____
                                          Thomas A. Clare (VA Bar No. 39299)
                                          Elizabeth M. Locke (VA Bar No. 71784)
                                          Andrew C. Phillips (VA Bar No. 88880)
                                          CLARE LOCKE LLP
                                          902 Prince Street
                                          Alexandria, Virginia 22314
                                          Telephone: (202) 628-7400
                                          tom@clarelocke.com
                                          libby@clarelocke.com
                                          andy@clarelocke.com

                                          *ATTORNEYS FOR PLAINTIFF/MOVANT NICOLE*
                                          *ERAMO*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that a true and correct copy of Nicole Eramo's Response to Non-Party

Respondent's Supplemental Response in Opposition to Plaintiff's Motion to Compel Production

was served on the below counsel on January 6, 2016 via ECF.

Pat A. Cipollone
Rebecca R. Anzidei
Philip J. O'Beirne
Stein Mitchell Cipollone Beato & Missner LLP
1100 Connecticut Avenue N.W., Suite 1100
Washington, D.C. 20036
Telephone: (202) 737-7777
Fax: (202) 296-8312
Email: pcipollone@steinmitchell.com
pobeirne@steinmitchell.com
Email: ranzidei@steinmitchell.com

Palma Pustilnik
Staff Attorney
Central Virginia Legal Aid Society
1000 Preston Avenue, Suite B
Charlottesville, VA 22903
Telephone: (434) 327-1443
Fax: (434) 296-5731
Email: palma@cvlas.org

Steven D. Rosenfield
913 E. Jefferson Street
Charlottesville, VA  22902
Telephone: (434) 984-0300
Fax: (434) 220-4852
Email: attyrosen@aol.com

*Attorneys for Nonparty Respondent "Jackie"*

Michael John Finney
William David Paxton
Gentry Locke Rakes & Moore
P.O. Box 40013
Roanoke, VA 24022-0013
Telephone: (540) 983-9373
Telephone: (540) 983-9334
Fax: (540) 983-9400

Email: finney@gentrylocke.com
Email: paxton@gentrylocke.com

Elizabeth A. McNamara
Samuel M. Bayard
Davis Wright Tremaine LLP
1251 Avenue of the Americas
21st Floor
New York, New York 10020
Telephone: (212) 489-8230
Fax: (212) 489-8340
Email: lizmcnamara@dwt.com
Email: samuelbayard@dwt.com

Alison B. Schary
DAVIS WRIGHT TREMAINE LLP
1919 Pennsylvania Avenue NW, Suite 800
Washington, DC 20006-3401
Telephone: (202) 973-4248 Fax: (202) 973-4448
E-mail: alisonschary@dwt.com

*Attorneys for Defendants Rolling Stone LLC,*
*Sabrina Rubin Erdely, and Wenner Media LLC*


Dated:  January 6, 2016                              By:  */s/ Thomas A. Clare*_____
                                                          Thomas A. Clare