CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JAN 2 5 2016

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

NICOLE P. ERAMO,	)
	)	Civil Action No. 3:15-MC-00011
	Plaintiff,	)
	)	**MEMORANDUM OPINION**
v.	)
	)	Hon. Glen E. Conrad
ROLLING STONE LLC, et al.,	)	Chief United States District Judge
	)
	Defendants.	)

In a related case before this court (the "defamation action"), plaintiff Nicole P. Eramo brings several defamation claims against defendants Rolling Stone LLC ("Rolling Stone"), Sabrina Rubin Erdely, and Wenner Media LLC ("Wenner Media"). In this action, which was transferred from the United States District Court for the Eastern District of Virginia, Eramo seeks to compel a non-party, referred to in the complaint as "Jackie," to produce certain documents. For the following reasons, the motion will be granted in part and denied in part.

## Background

Nicole P. Eramo is an Associate Dean of Students at the University of Virginia ("UVA"). Rolling Stone and Wenner Media are the publishers of Rolling Stone magazine. Ederly is a reporter and Contributing Editor for Rolling Stone.

On November 19, 2014, defendants published an article entitled, "A Rape on Campus: A Brutal Assault and Struggle for Justice at UVA" (the "Article"). Compl. ¶ 45. The Article contained a graphic depiction of the alleged gang rape of UVA student, Jackie, at a fraternity house on September 28, 2012. None of the alleged assailants were identified in the Article. According to the Article, Jackie's mother informed an academic dean that Jackie had a "bad experience" at a party. Id. ¶ 56. The academic dean then put Jackie in touch with Eramo.

The Article then goes on to describe Jackie's interactions with Eramo, who was also the head of UVA's Sexual Misconduct Board at the time. The Article claims that "[i]f [] Eramo was surprised at Jackie's story of gang rape, it didn't show." Id. ¶ 57. According to the Article, Eramo then provided Jackie with several options. Eramo explained that Jackie could file a criminal complaint with the police. However, if Jackie wished to keep the matter within UVA, Eramo gave her two options. As to the first option, Jackie could file a formal complaint with UVA's Sexual Misconduct Board, which would be decided in a "formal resolution" with a jury of students and faculty, as well as a dean serving as the judge. Id. ¶ 58. As to the second option, Eramo could conduct an "informal resolution," wherein Jackie would face her attackers in Eramo's presence and tell them how she felt; Eramo could then issue a directive to the men. Id. The Article stated that Eramo did not pressure Jackie as to which option she should choose; however, Jackie decided not to file any complaint regarding her attack. The Article also claimed that, when Jackie asked Eramo about sexual assault statistics at UVA, Eramo responded that those statistics were not publicized "because nobody wants to send their daughter to the rape school." Id. ¶ 61. Finally, Jackie again met with Eramo to discuss her assault and other alleged attacks at the same fraternity. The Article stated that Jackie was "disappointed by Eramo's nonreaction" and expected "shock, disgust, and horror." Id. ¶ 63.

The Article caused a "media firestorm" after its release and was viewed online more than 2.7 million times. Id. ¶ 1. The complaint in the defamation action alleges that Eramo's reputation as an advocate and supporter of victims of sexual assault was destroyed by the Article. She was attacked by individuals on television and the Internet, and she received hundreds of threatening, vicious emails from members of the public. As a result, the complaint alleges that Eramo suffered "significant embarrassment, humiliation, mental suffering and emotional distress." Id. ¶

2

207.

After further investigation by independent entities, it was reported that the Article, and key components of Jackie's story, could not be substantiated. Within two weeks of the Article's publication, the fraternity where Jackie's alleged attack took place produced evidence demonstrating that no "date function" or other social gathering was held on the night in question, and that no member of the fraternity matched the description given by Jackie for her primary attacker. Id. ¶ 90. On December 5, 2014, Rolling Stone issued a statement that acknowledged the discrepancies in Jackie's account, blamed Jackie for misleading Erdely, and claimed that their trust in Jackie had been "misplaced." Id. ¶ 91. The next day, a group of students, including Jackie, wrote to The Cavalier Daily, decried defendants' false portrayal of Eramo, and lauded her work on behalf of sexual assault victims. On March 23, 2015, the Charlottesville Police Department issued a statement that it had "no substantive basis of fact to conclude that the incident occurred that is consistent with the facts described in [the Article]." Id. ¶ 125. Moreover, a report commissioned by Rolling Stone described the Article as a "journalistic failure" and concluded that defendants "set aside or rationalized as unnecessary essential practices of reporting." Id. ¶ 14. Overall, Eramo contends that "[d]efendants' purpose in publishing the Article was to weave a narrative that depicted [UVA] as an institution that is indifferent to rape on campus, and more concerned with protecting its reputation than with assisting victims of sexual assault. Id. ¶ 2.

On May 12, 2015, Eramo filed a six-count defamation complaint against defendants in the Circuit Court for the City of Charlottesville. The complaint alleges that the statements in the Article concerning Eramo were false and defamatory. Specifically, Eramo denies calling UVA "the rape school" or discouraging Jackie from reporting and/or sharing her attack. Instead,

3

Eramo claims that she encouraged Jackie to report her incident with police, offered to assist Jackie in the reporting process, and arranged for Jackie to meet with police. Eramo also alleges that defendants purposely ignored "red flags" and other evidence that indicated that Jackie's story lacked credibility. Eramo's defamation claims arise not only from the allegations in the Article, but also from other statements made by the defendants in subsequent articles and media appearances. Defendants deny that they acted with negligence or actual malice, or that they had any previous indications that Jackie was an unreliable source.

On May 29, 2015, defendants removed the action to this court. On July 27, 2015, Eramo served Jackie with a subpoena pursuant to Rule 45 of the Federal Rules of Civil Procedure. Jackie refused to provide any documents in response to the subpoena. The parties attempted to resolve the issues with the subpoena through letters and telephone conferences, but they were unable to reach an agreement.

On November 13, 2015, Eramo filed a motion to compel Jackie to comply with the subpoena in the United States District Court for the Eastern District of Virginia. That motion was transferred to this court on December 9, 2015. On December 29, 2015, Eramo filed a supplemental motion to compel, stating that production of documents from defendants and others obviated the need for certain documents from Jackie. Accordingly, Eramo seeks only the following documents: (1) Jackie's relevant communications with defendant Sabrina Rubin Erdely (Demand Nos. 1 and 18); (2) Jackie's relevant communications with Rolling Stone (Demands No. 2 and 18); (3) Jackie's relevant communications with Nicole Eramo (Demand No. 6); (4) Jackie's relevant communications with UVA (Demands No. 12); (5) Any communications Jackie authored or received while using the pseudonym "Haven Monahan," or those in which Jackie references "Haven Monahan" (Demand No. 15); and (6) Jackie's relevant

4

communications with others regarding the Rolling Stone article (Demand No. 16).[1] On January 12, 2016, the court held a hearing on the motion to compel. The motion has been fully briefed and is ripe for disposition.

## Discussion

The Federal Rules of Civil Procedure provide that a party "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]"[2] Fed. R. Civ. P. 26(b)(1). "Information within this scope of discovery need not be admissible in evidence to be discoverable." Id. Moreover, the discovery rules are to be accorded broad and liberal construction. Herbert v. Lando, 441 U.S. 153, 177 (1979); see also CareFirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc., 334 F.3d 390, 402 (4th Cir. 2003) (holding that "[d]iscovery under the Federal Rules of Civil Procedure is broad in scope and freely permitted"). If a party fails to produce requested information, the requesting party may move for an order compelling production. Fed. R. Civ. P. 37(a)(3)(B).

District courts generally have broad discretion in managing discovery, including whether to grant or deny a motion to compel. Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., 43 F.3d 922, 929 (4th Cir. 1995). "[T]he party or person resisting discovery, not the party moving to compel discovery, bears the burden of persuasion." Kinetic Concepts, Inc. v. ConvaTec Inc., 268 F.R.D. 226, 243 (M.D.N.C.2010). Where a prima facie showing of discoverability has been

---

[1] At the January 12, 2016 hearing, counsel for Eramo informed the court that Demand No. 17 has been withdrawn from the motion to compel.

[2] Rule 26(b)(1) was amended, effective December 1, 2015, to include a proportionality consideration for the scope of discovery. Before the 2015 amendment, proportionality was a factor in a different subsection of Rule 26, which governed court-ordered limitations on discovery. Fed. R. Civ. P. 26(b)(2)(C). The Advisory Committee noted that restoring proportionality "does not change the existing responsibilities of the court and the parties to consider proportionality[.]" Fed. R. Civ. P. 26 advisory committee's note to 2015 amendment. As such, the court finds that the pre-amendment cases cited in this opinion are still applicable. However, given the 2015 amendment, the court will put a greater emphasis on the need to achieve proportionality, in determining whether to grant the motion to compel.

5

made by the party seeking discovery, "the burden shifts ... to the resisting party to show 'lack of relevance by demonstrating that the requested discovery (1) does not come within the broad scope of relevance as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption of broad discovery.'" Desrosiers v. MAG Industrial Automation Sys., LLC, 675 F. Supp. 2d 598, 601 (D. Md. 2009) (internal citations omitted). Despite the additional proportionality consideration required under the amendment to Rule 26, the Advisory Committee Notes provide that "the [2015 amendment] does not place on the party seeking discovery the burden of addressing all proportionality considerations." Fed. R. Civ. P. 26 advisory committee's note to 2015 amendment.

Jackie argues that the motion to compel should be denied for three reasons: (1) the scope of discovery sought contravenes Rule 412 of the Federal Rules of Evidence; (2) the requests are irrelevant and burdensome; and (3) Jackie's communications with Eramo and UVA are privileged.[3] The court will consider each argument in turn.

## I. Rule 412 of the Federal Rules of Evidence

Jackie first objects to the subpoena on the grounds that the information sought is inadmissible under Rule 412 of the Federal Rules of Evidence. Rule 412 provides that evidence is not admissible in a civil or criminal proceeding involving alleged sexual misconduct if such evidence is "offered to prove that a victim engaged in other sexual behavior" or "offered to prove a victim's sexual predisposition." Fed. R. Evid. 412(a)(1)-(2). In civil cases, the only exception to this rule is if the proffering party can show that the "probative value substantially outweighs

---

[3] Jackie also objected to production of documents on the grounds that such disclosure would violate the Family Educational Rights and Privacy Act ("FERPA"), 20 U.S.C. § 1232g. In a separate order filed in the Defamation Action, the court concluded that the requirements under FERPA had been met and overruled Jackie's objection on that ground. See Order, Eramo v. Rolling Stone LLC, 3:15-CV-00023 (W.D. Va. Jan. 14, 2016), ECF No. 47.

6

the danger of harm to any victim and of unfair prejudice to any party." Id. at 412(b)(2). The rule is intended to "afford increased protection to alleged victims of sexual misconduct, in either civil or criminal proceedings, to safeguard them against the invasion of privacy, potential embarrassment and sexual stereotyping that is associated with public disclosure of intimate sexual details and the infusion of sexual innuendo into the fact finding process." Fed. R. Evid. 412 advisory committee's note to 1994 amendment. However, Rule 412 does not apply in a "defamation action involving statements concerning sexual misconduct in which the evidence is offered to show that the alleged defamatory statements were true or did not damage the plaintiff's reputation." Id.

Eramo argues that Rule 412 does not apply in this case because Rule 412 only concerns admissibility of evidence at trial, rather than discoverability of evidence. Futhermore, she asserts that Rule 412 is not implicated because the evidence sought will not be offered to prove that Jackie engaged in other sexual behavior or her sexual predisposition. Instead, Eramo contends that the documents in Jackie's possession concern the alleged sexual assault that was the focus of the Article.

In the instant action, the court agrees that Rule 412 governs the admissibility of evidence at trial, and that relevance is not equivalent to admissibility. In fact, the Advisory Committee Notes to the 1994 amendments to Rule 412 are quite explicit in this respect. See id. ("[P]rocedures [to determine admissibility] do not apply to discovery of a victim's past sexual conduct or predisposition in civil cases, which will continue to be governed by Fed. R. Civ. P. 26."). However, the Advisory Committee Notes also instructs that courts should "enter appropriate orders pursuant to Fed. R. Civ. P. 26(c) to protect the victim against unwarranted inquiries and to insure confidentiality." Id. In addition, district courts have considered Rule 412

7

when resolving discovery disputes involving an alleged victim of sexual assault, but typically in the context of sexual harassment cases in which the evidence concerns the victim's past sexual behavior at the workplace. See, e.g., Herchenroeder v. Johns Hopkins Univ. Applied Physics Lab., 171 F.R.D. 179, 182 (D. Md. 1997) (listing cases). As such, the proper inquiry at this juncture is whether the information sought from Jackie is discoverable, keeping in mind relevance, proportionality, and Jackie's interests in assuring confidentiality and preventing unwarranted inquiries into her sexual conduct. The court will consider these factors in the next section.

## II. Relevance and Proportionality of the Requests

Jackie's second objection to the subpoena is that the materials sought are irrelevant, and that production would be unduly burdensome. Again, Rule 26 of the Federal Rules of Civil Procedure provides that evidence is discoverable only if it is relevant to any party's claims or defenses and proportional to the needs of the case. The rule also provides that the court "must limit the frequency or extent of discovery otherwise allowed by these rules" if it determines that "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive[,]" or that "the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C). Rule 45 of the Federal Rules of Civil Procedure also provides that the court "must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance." Fed. R. Civ. P. 45(d)(2)(B)(ii). District courts give extra consideration to the objections of non-party, non-fact witnesses when weighing burden versus relevance. See Schaff v. SmithKline Beecham Corp., 233 F.R.D. 451, 453 (E.D.N.C. 2005) ("In the context of evaluating subpoenas issued to third parties, a court will give extra consideration to the

8

objections of a non-party, non-fact witness...." (internal citations and quotation marks omitted)).

Given the broad construction afforded to the rules of discovery, the court finds that the information sought in Demand Nos. 1, 2, 6, 12, and 18 is discoverable as Eramo has made a prima facie showing of relevance and proportionality, which has not been sufficiently refuted by Jackie. First, the court finds that the communications between Jackie and defendants, and between Jackie and Eramo/UVA, are highly relevant to the claims and defenses in the defamation action, and that discovery of such communications is proportionate to the needs of the case. Specifically, as to Jackie's communications with defendants, the court believes that these interactions are relevant to the claims in the defamation action as Eramo argues that the statements in the Article were defamatory, and that defendants negligently or recklessly disregarded red flags about Jackie's story. In addition, what Jackie said to defendants is also relevant to defendants' anticipated defense, namely that they exercised due diligence with Jackie's story and had no reason to doubt her credibility. Moreover, defendants have informed the court that they have already turned over documents containing their conversations with Jackie. As such, Eramo is entitled to corroborate the documents that she received from defendants with the documents in Jackie's possession. The court concludes that the scope of such discovery is reasonable.

With respect to Jackie's communications with Eramo/UVA, the court finds that these documents are also relevant to the claims in the defamation action because Eramo contends that defendants described her interactions with Jackie in a way that was defamatory. Such documents also are relevant to defendants' anticipated defense to the extent that they argue that they exercised due diligence in fact checking Jackie's story. Moreover, Eramo is entitled to production of her communications with Jackie in order to substantiate receipt of the documents

9

that she has in her possession. Such discovery is reasonable and proportionate. Accordingly, the court will grant the motion to compel with respect to Demands Nos. 1, 2, 6, 12, and 18.

Demand No. 15 seeks Jackie's communications under the pseudonym "Haven Monahan" and her communications which reference "Haven Monahan." The court finds that only communications between "Haven Monahan" and Ryan Duffin and communications between "Haven Monahan" and any other individual whose name Jackie had provided to defendants prior to the Article's publication are within a reasonable scope of discovery. Similarly, the court finds that communications between Jackie and any individual whose name Jackie had provided to defendants prior to the Article's publication, which reference "Haven Monahan," are also within a reasonable scope of discovery. One of the main issues in the defamation action is defendants' due diligence in relying on Jackie as a source for the Article. Plaintiff argues that defendants could have interviewed Ryan Duffin and others about Jackie's story and her credibility as a witness, but failed to do so. As such, these communications are relevant and proportionate as they will help resolve the question of what the defendants could have discovered about Jackie's story and credibility if they had interviewed Jackie's friends. As to communications between "Haven Monahan" and any individual whose name Jackie had not provided to defendants prior to the Article's publication, the court finds that such conversations are outside a reasonable scope of discovery as they are irrelevant and disproportionate to the needs of the case. In other words, communications that Jackie, posing as "Haven Monahan," may have had with undisclosed, third parties would not be helpful in evaluating defendants' assessment of Jackie's information. Such communications would only be relevant if they were made to individuals whose names were already provided to defendants by Jackie. Accordingly, the court will direct production under Demand No. 15 only with respect to communications between "Haven Monahan" and Ryan

10

Duffin, communications between "Haven Monahan" and any other individual whose name Jackie had provided to defendants, and communications between Jackie and any disclosed individual which reference "Haven Monahan."

As to Demand No. 16, which seeks all of Jackie's communications about the Article, the court finds that such information is relevant to Eramo's case only in part. The court finds that these communications are relevant to the claims and defenses in the defamation action, namely what Jackie told the defendants. They are also relevant to the anticipated defenses in the defamation action to the extent that defendants argue that they conducted appropriate due diligence and published an accurate account of Jackie's interactions with Eramo/UVA. In an effort to balance Jackie's privacy interest in the communications with their apparent relevance, the court will limit Demand No. 16 to only Jackie's communications regarding the Article itself and exclude any communications that refer to the details of her alleged assault. The court believes that the particulars of Jackie's alleged assault are irrelevant to the claims and defenses of the defamation action and are disproportionate to Eramo's need for the information. The crux of the dispute in the defamation action is defendants' portrayal of Eramo and Jackie's communications with Eramo/UVA. The specific, graphic details about what may or may not have occurred on the night of September 28, 2012 have no bearing on these issues.

The court is constrained to find that it must also limit the temporal scope of Demand No. 16. On December 5, 2014, The Washington Post published an article in which it indicated that Jackie continued to stand by her story as it was described in the Article. It is the court's understanding that this was Jackie's last public comment about the Article. The court therefore finds that Jackie's communications about the Article after December 5, 2014 have no relevance as to the dispute between Eramo and defendants. These post-December 5, 2014 communications

11

Case 3:15-mc-00011-GEC   Document 34   Filed 01/25/16   Page 11 of 14   Pageid#: 736

are not helpful in assessing what Jackie told defendants about her interactions with Eramo/UVA and what defendants should have done to corroborate Jackie's story. Similarly, as to the period prior to December 5, 2014, the court also finds that only communications about the Article that were initiated by Jackie are relevant to the defamation action; the opinions expressed by the recipients of Jackie's communications have no bearing on defendants' assessment of Jackie's story. Accordingly, the court concludes that Demand No. 16 is discoverable, with the limitations as set forth herein.

### III. Patient-Counselor Privilege

Jackie finally argues that Demand Nos. 6 and 12, concerning her communications with Eramo and UVA, implicate the patient-counselor privilege. The complaint states that Eramo "met with and counseled Jackie," Compl. ¶ 4, and that Jackie also met with UVA employee, Emily Renda, who "work[ed] on sexual assault issues," Id. ¶ 131. Virginia law provides that "programs and individuals providing services to victims" of sexual assault "shall protect the confidentiality and privacy of persons receiving services." Va. Code Ann. § 63.2-104.1(A). The statute defines "programs" to include public and not-for-profit agencies whose "primary mission ... is to provide services to victims of sexual [assault]." Id. § 63.2-104.1. Specifically, these individuals and programs shall not "[d]isclose any personally identifying information or individual information collected in connection with services requested" or "[r]eveal individual client information without the informed, written, reasonably time-limited consent" of the victim. Id. § 63.2-104.1(B)(1)-(2). However, the statute permits disclosure in response to a "court mandate." Id. § 63.2-104.1(C).

The court finds that Jackie's argument that her communications are privileged is without merit. The court is unaware of any authority that holds that Virginia Code § 63.2-104.1 creates a

12

patient-counselor privilege, and the court declines to do so in this case. In addition, the statutory language permits disclosure of protected information in response to a court mandate, which provides further support for the court's finding that the statute does not establish an evidentiary privilege. Even assuming that the court could find that this statute establishes a patient-counselor privilege, it appears that Jackie may have waived such privilege by voluntarily disclosing the contents of her communications with Eramo and UVA to defendants. See United States v. Bolander, 722 F.3d 199, 223 (4th Cir. 2013) (holding that a patient waives the patient-psychotherapist privilege by voluntarily disclosing the substance of therapy sessions to third parties). Accordingly, the court finds that Request Nos. 6 and 12 do not implicate privileged material.

## IV. Protective Order

As a final note, the court recognizes that there is a rigorous protective order in place in the defamation action. In an additional effort to balance the needs of the case with Jackie's interest in privacy and confidentiality, the documents that Jackie provides in response to the subpoena shall be marked "Confidential" and subject to the terms of the protective order.

## Conclusion

For the foregoing reasons, the motion to compel will be granted in part and denied in part. The motion will granted as to Demand Nos. 1, 2, 6, 12, and 18 in the subpoena. The motion will be granted in part and denied in part as to Demand No. 15 as production shall be limited to only communications between "Haven Monahan" and Ryan Duffin, communications between "Haven Monahan" and any other individual whose name was previously provided to defendants, and communications between Jackie and any disclosed individual that mention "Haven Monahan." The motion will also be granted in part and denied in part as to Demand No. 16 as

13

production shall be limited to only communications initiated by Jackie regarding the Article on or before December 5, 2014. The motion will be denied as moot as to Demand No. 17. Finally, the documents that Jackie provides in response to the subpoena shall be marked "Confidential" and treated pursuant to the protective order in the defamation action.

The Clerk is directed to send certified copies of this memorandum opinion and the accompanying order to all counsel of record.

DATED: This 25th day of January, 2016.

_____
Chief United States District Judge