IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| NICOLE P. ERAMO | ) |
| | ) |
| *Plaintiff*, | ) Case No. 3.:15-mc-00011-GEC |
| v. | ) |
| ROLLING STONE LLC, *et al.* | ) |
| *Defendants*. | ) |

**NON-PARTY RESPONDENT'S MEMORANDUM IN SUPPORT OF HER MOTION TO QUASH PLAINTIFF'S RULE 45 DEPOSITION SUBPOENA OR IN THE ALTERNATIVE MOTION FOR A PROTECTIVE ORDER**

As part of Plaintiff Nicole Eramo's committed strategy to attack Respondent, a third-party sexual assault victim, she now insists that Respondent should sit for a deposition unlimited in scope. Ignoring the Court's rulings that certain topics, including Respondent's underlying sexual assault, are simply not relevant to Dean Eramo's defamation claims against Rolling Stone, she refuses to agree that any topic is off limits during the upcoming deposition. This refusal and failure to even acknowledge the likelihood of causing Respondent significant additional harm by raising irrelevant topics in the deposition reveals Dean Eramo's true motive here. Dean Eramo has exhibited no interest in attempting to balance her supposed need for any information with the inevitable and undeniable damage that will result from Respondent having to sit for this deposition. Instead, Dean Eramo continues her scorched earth attacks on Respondent, in the misguided hope that her unwarranted attacks can distract from the fact that Dean Eramo has no valid claims. The Office of Civil Rights of the Department of Education reached conclusions regarding Dean Eramo's violations of Title IX that soundly defeat her sole causation and

1

damages theory in this case. While Dean Eramo repeatedly argues that Respondent was the central figure in the Rolling Stone article, this is entirely irrelevant to whether or not Respondent has any factual information relevant to Dean Eramo's defamation claims. For the reasons detailed below, Dean Eramo should not be permitted to persist in her persecution of a third-party sexual assault victim in furtherance of her desperate attempt to revive her dead claims.

## FACTUAL BACKGROUND

As a result of the February 17, 2016, call with the Court and the subsequent Order, a deposition of Respondent has been scheduled for April 5, 2016, with an accompanying briefing schedule to address any necessary relief. Further, the Court instructed the parties that any deposition would be limited to the 7-hours allowed by the federal rules, absent a persuasive showing that this would not be sufficient, and that the parties were to meet and confer in order to see if any agreement could be reached regarding stipulations or other limitations as to the scope of the deposition. Respondent reached out to both Plaintiff and Defendants in order to meet and confer. Rolling Stone provided a list of potential stipulations that they believed could limit the scope and time required for the deposition, if agreed to, and Respondent and Defendants were in the process of meeting and conferring about these potential stipulations. It was during this meet and confer process that Respondent learned that Plaintiff was also seeking to de-designate the transcripts and audiotapes of Respondent's conversations with Ms. Erdely as non-Confidential, despite the fact that all of these materials clearly and unequivocally contain Respondent's confidential information as that is defined in the Amended Stipulated Protective Order, ¶ 2.4. Defendants properly refused to de-designate these materials.

During the one meet and confer conversation Respondent had with Plaintiff, Plaintiff refused to consider the most basic limitations on the scope of the deposition, such as excluding Respondent's underlying assault as contemplated by the Court's January 25, 2016, Order. In

2

fact, Plaintiff went even further and stated that any stipulations that Respondent entered into with Defendants would only serve to expand the scope of the deposition and extend the amount of time that Plaintiff needed to depose Respondent. Plaintiff also confirmed that she was seeking to de-designate these Confidential Materials, but provided no valid justification for doing so. If her wish was to provide certain information contained within those materials to the Court, that could be done under seal.

Respondent made it clear both on the phone, and in writing, that the information contained in those materials was Confidential as defined by the Protective Order, contained Respondent's highly personal information that was wholly irrelevant to the claims in the case, and that the materials needed to remain Confidential and treated as such. Plaintiff responded with a letter that was not only unproductive, but expressly included information from the documents Plaintiff had sought to de-designate but still remain Confidential under the Protective Order. This information has never been reported on, and is not even included in the Rolling Stone article. Plaintiff did not mark the letter Confidential, perhaps in an attempt to get around the constraints of the Protective Order.

The letter purports to be an attempt to meet and confer about possible stipulations, but is in no way a meaningful effort to compromise based on Plaintiff's clear understanding of Respondent's position. Each and every proposed stipulation was a negative attack on Respondent, contains highly personal and confidential information, and demonstrates a complete lack of compassion for Respondent. Plaintiff cannot have reasonably believed that Respondent would even entertain such stipulations, let alone that making such aggressive attacks would open a productive dialogue. The only thing the letter made clear was that Plaintiff plans to use the deposition as a weapon to inflict as much harm on Respondent as possible, with utter disregard for the significant and undeniable psychological harm that will result and without regard to the

3

actual asserted claims in the case. All in the furtherance of her attempt to extract money from Rolling Stone for reporting opinions about Plaintiff that the Office of Civil Rights has already independently concluded to be true.

**ARGUMENT**

**I.     THE RISK OF HARM TO RESPONDENT OUTWEIGHS ANY LIMITED NEED FOR DEPOSITION AND THE SUBPOENA SHOULD BE QUASHED**

Plaintiff's subpoena seeks a deposition of Respondent without any limitation. On its face this subpoena is overly broad and unduly burdensome and should be quashed. Moreover, Rule 26's proportionality requirement mandates against any such deposition. Though Respondent may have been featured in the Rolling Stone article, she plays no such central role in Dean Eramo's defamation case, which was Dean Eramo's choice when she decided not to name Respondent as a party. The only facts relevant to Dean Eramo's case are what Respondent said to Defendants about Dean Eramo. What Respondent said to Rolling Stone about Dean Eramo is contained in the audio tapes and transcripts of their conversations and in documents, which given Respondent's fragile state, is reason alone to quash the deposition.[1] Yet Plaintiff believes she is entitled to ask Respondent about anything covered by her pleadings, Defendants' pleadings, her subpoena and all of the briefing on her motion to compel. This goes far beyond what the Federal Rules allow, including Rule 412, Rule 26 and Rule 45, to say nothing of this Court's Order addressing the scope of discovery. It also ignores the very real risk of significant and irreparable harm that Respondent will suffer if forced to answer questions about the trauma she suffered and the aftermath, as counsel has repeatedly explained, and as is already before the Court.

---

[1] *See Ahrens v. Ford Motor Co.*, 340 F.3d 1142, 1147 (10th Cir. 2003) ("A court's discretion to quash a discovery request due to a witness' failing health or the overly burdensome nature of the request is well established, particularly where the information is believed to be obtainable from another source"); Fed.R.Civ.P. 26(b)(2) and (c).

4

The balancing of any potential relevance of any testimony that Plaintiff seeks from Respondent is greatly outweighed by the undeniable harm that will result from Respondent being re-victimized by Plaintiff's questioning, especially if that questioning takes on the increasingly aggressive and insulting tenor that has been demonstrated not only in public pleadings, but also Dean Eramo's counsel's unfortunate and frequent comments to the press regarding the same. None of the actual claims brought by Dean Eramo relate in any way to the circumstances of Respondents' assault. Instead, they are premised on statements of opinion (which are not actionable as defamation) expressed by the Article regarding Dean Eramo's reaction to reports of sexual assault. The Court has already addressed this issue and held that the facts and circumstances surrounding Respondent's sexual assault "are irrelevant to the claims and defenses of the defamation action *and* are disproportionate to Eramo's need for the information" and the circumstances of Respondent's assault "***have no bearing on these issues***." Memorandum Opinion, Dkt. 34 (emphasis added). These conclusions apply with even greater force in the context of a deposition.

Tellingly, Dean Eramo does not really suggest otherwise. Instead, she continues to argue that what is necessary to prove her claims is (1) what Respondent said to people ***other than Defendants,*** and (2) what others ***would have said*** to Defendants had Defendants asked. As a threshold matter, what other people knew or would have told Defendants, had they spoken with them during the course of their work on the article, is not relevant to what Rolling Stone actually printed in the article. Furthermore, as the Court already correctly noted at the hearing on the motion to compel, even if such information were relevant, what Defendants may have found out from other witnesses is not information to be obtained ***from Respondent.*** Finally, the communications that Respondent had with anyone other than Defendants has no bearing on what

5

Defendants heard from Respondent and ultimately reported. Yet Dean Eramo is anxious to grill Respondent on untold topics that have no bearing on her actual claims. The only basis offered for such abusive and harassing tactics is to attempt to attack a third-party sexual assault victim. This behavior should not be allowed, much less rewarded, especially in light of the weakness of Dean Eramo's case.

### A. THE RISK OF HARM TO RESPONDENT IS SIGNIFICANT AND SHE NEEDS TO BE PROTECTED AS A THIRD-PARTY SEXUAL ASSAULT VICTIM

As the Court here has already recognized, Rule 412 exists "to safeguard the alleged victim against the invasion of privacy, potential embarrassment and sexual stereotyping that is associated with public disclosure of intimate sexual details and the infusion of sexual innuendo into the fact-finding process." Advisory Committee Notes to FRE 412. The Court has further recognized that during the discovery process, "courts should 'enter appropriate orders pursuant to Fed.R.Civ.P. 26(c) to protect the victim against unwarranted inquiries and to ensure confidentiality.'" Dkt. 34 at 7 (quoting Adv. Com. Notes to Rule 412). This is true for a party – it is particularly true for a third party, so precisely such an order is necessary here.

Courts have long recognized the harm that is caused by forcing sexual assault victims to relive their assaults by describing them. *See e.g. Humbert v. O'Malley*, 303 F.R.D. 461, 465 (D. Md. 2014) (victim's participation would "unnecessarily trigger her PTSD symptoms, forcing her to relive 'overwhelming and debilitating feelings' associated with her rape."); *Harrington v. New England Life Ins. Co.*, 684 F. Supp. 174, 177 (N.D. Ill. 1988) *aff'd sub nom. Harrington v. New England Mut. Life Ins. Co.*, 873 F.2d 166 (7th Cir. 1989) (in insurance case in which sex assault victim victim was third party, court refused to "force[] the victim to relive that horrible and terrifying evening . . ."). There is extensive support in the medical literature for the fact that

sexual assault victims will experience trauma if they are forced to revisit the details of their assault.[2] These manifest harms notwithstanding, Dean Eramo is dead set on forcing Respondent to revisit her sexual assault, despite the Court having already ruled details of Respondent's assault having no bearing on this case.

But the risk of harm is beyond argument, as is made clear in the information provided to the Court. These most severe and likely consequences of any deposition of Respondent must be considered and weigh against any deposition.[3]

The real and significant harm that Respondent ***will suffer*** as a result of any deposition, let alone a highly adversarial one as is sure to occur here, greatly outweighs any possible need Dean Eramo might have for discovery that is marginally relevant at best. Dean Eramo simply cannot satisfy Rule 412's requirement that the probative value of the discovery sought "***substantially outweighs*** the ***danger of harm*** to any victim and of unfair prejudice to any party," nor has she really tried. Throughout the back and forth between Plaintiff and Respondent regarding any potential deposition, Plaintiff did not once offer any justification sufficient to warrant the certain harm, trauma and upset that the wide ranging and intrusive deposition of Respondent insisted on by Plaintiff will cause. She cannot demonstrate that the information she seeks in this deposition is remotely relevant to her claims, let alone that it satisfies the requirement under Rule 26 that the

---

[2] *See e.g.* Courtney Ahrens, *Being Silenced: The Impact of Negative Social Reactions on the Disclosure of Rape*, Am J Community Psychol. 2006 Dec; 38(3-4): 263–274. ("When rape survivors are exposed to victim-blaming behaviors or attitudes, the experience may feel like a 'second assault' or a 'second rape', a phenomenon known as 'secondary victimization' (Campbell, 1998; Madigan & Gamble, 1991; Martin & Powell, 1994; Williams, 1984). In many instances, these behaviors are overt as system personnel explicitly hold survivors responsible for the assault, doubt the veracity of survivors' stories, or minimize the seriousness of the crime (Madigan & Gamble, 1991)."); Rebecca Campbell et al., *Preventing the "Second Rape": Rape Survivors' Experiences with Community Service Providers*, 16 J. INTERPERSONAL VIOLENCE 1239 (2001); Rebecca Campbell, *What Really Happened? A Validation Study of Rape Survivors' Help-Seeking Experiences with the Legal and Medical Systems*, 20 Violence and Victims 55, 56 (2005).

7

evidence be "relevant to any party's claim or defense ***and*** proportional to the needs of the case, considering . . . the burden or expense of the proposed discovery outweighs its likely benefit." (emphasis added).

II. **THE WEAKNESS OF PLAINTIFF'S CLAIMS UNDERMINES ANY SUPPOSED NEED FOR THE DISCOVERY SHE SEEKS**

As detailed above, parties' discovery demands cannot be unmoored from the actual claims and defenses at issue in the given case. Specifically, Rule 26 states that courts "must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; . . . or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, ***considering the needs of the case***, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and ***the importance of the discovery in resolving the issues***." Fed. R. Civ. P. 26(b)(2)(C).

While Dean Eramo continues to pretend otherwise, by Dean Eramo's own choosing, Respondent is not a party to this matter and the rules provide even further protections for such non-parties. Under Rule 45, Dean Eramo and Defendants "must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45. Rule 26 adds to these protections, stating that "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: (A) forbidding the disclosure or discovery . . . (D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to

---

[3] *See Fonner v. Fairfax County, VA*, 415 F.3d 325, 331-332 (4th Cir. 2005) (affirming decision to quash deposition subpoena after psychologist submitted affidavit that witness was emotionally fragile, and a deposition would cause

certain matters; . . ." Fed. R. Civ. P. 26. *See Schaaf v. SmithKline Beecham Corp.*, 233 F.R.D. 451, 453 (E.D.N.C. 2005)("In the context of evaluating subpoenas issued to third parties, a court will give extra consideration to the objections of a non-party, non-fact witness in weighing burdensomeness versus relevance.")(internal citations and punctuation omitted); *Myers v. AT&T, Inc.*, No. 5:12-CV-00714-BO, 2015 WL 4566940, at *3 (E.D.N.C. July 28, 2015)("In the context of evaluating subpoenas issued to third parties, a court will give extra consideration to the objections of a non-party, non-fact witness in weighing burdensomeness versus relevance.")(internal citations omitted).

Even if the evidence sought were relevant, which it is not, the probative value to any material issue in this case is negligible. The only potentially relevant facts that Respondent could even testify to are what she told Defendants about Dean Eramo. But we have the unique circumstance here, as explained by Defendants at the motion to compel argument, where there is no dispute as to everything that Respondent said to Rolling Stone. There are audio tapes and transcripts of these conversations. There is simply no need to re-victimize the Respondent and open her up to irrelevant, harassing, painful questioning just to confirm what the parties already know and agree on. Further, it is without doubt that the transcripts and tape recordings will be a more complete record of what was told to Rolling Stone almost two years ago. In light of these circumstances, any balancing of the burden to Respondent against the need of the parties to the discovery, weighs overwhelmingly in favor of protecting Respondent, avoiding the unnecessary damage that will be done to Respondent, and quashing the deposition subpoenas currently pending.

Finally, the many weaknesses in Plaintiff's case and the significant likelihood that

---

him to be "emotionally over-whelmed and traumatized.")

Plaintiff's case will not even survive summary judgment, weigh heavily against allowing the deposition to go forward. As has been detailed in prior briefing on Plaintiff's motion to compel,[4] Dean Eramo's case rests on her argument that the Rolling Stone article contained negative opinions, inferences and argumentative conclusions about Dean Eramo *in spite of* positive statements attributed to Respondent. Specifically, the only defamatory statement that Dean Eramo claims was made in the actual article[5] was Rolling Stone's characterization of Dean Eramo as not sufficiently supportive of victims alleging a sexual assault. *See Generally*, Pl. Mem. in Support of Motion to Compel, at 34-35. But the statements that Dean Eramo claims were defamatory are actually statements of opinion, not statements of provable facts. Such conclusory opinions do not constitute defamation and are simply not actionable under Virginia law, which states that, "speech which does not contain a provably false factual connotation, or statements which cannot reasonably be interpreted as stating actual facts about a person cannot form the basis of a common law defamation action. Statements that are relative in nature and depend largely upon the speaker's viewpoint are expressions of opinion." *Jordan v. Kollman*, 269 Va. 569, 576, 612 S.E.2d 203, 206 (2005) (internal citation omitted).

Dean Eramo will also not be able to prove causation or damages, both of which are predicated on her reputation as a University administrator that properly responded to allegations of sexual assault. Dean Eramo claims that she suffered harm to her professional standing as a direct result of the article, claiming that, "*Rolling Stone* and Erdely attributed to Dean Eramo conduct unfit for a counselor of victims of sexual assault and the head of UVA's Sexual Misconduct Board. Moreover, these statements prejudiced Dean Eramo in her profession as a

---

[4] To the extent relevant, Respondent incorporates by reference her briefs filed in connection with Dean Eramo's Motion to Compel.

UVA Dean and administrator who is responsible for the welfare of UVA students and sexual assault survivors." (Pl. Mem. in Support of Motion to Compel, at 35.) But in September 2015, the Office of Civil Rights (OCR) of the Department of Education (DOE) issued a report that was more critical about Dean Eramo than the Article itself and destroys any causal link Dean Eramo might attempt to draw between the opinions in the article and damage to her professional reputation. Specifically, the OCR report found:

- that Dean Eramo failed to meet her obligations to provide for (to use Plaintiff's words) "the welfare of UVA students and sexual assault survivors" under Title IX;

- that it presented a conflict of interest for Dean Eramo to serve as a counselor of victims of sexual assault and the head of UVA's Sexual Misconduct Board;

- that Dean Eramo violated Title IX and created a hostile environment for sexual assault survivors in her comments to the University community on the campus radio station, only weeks before the article was published;

- that "during the 2008-2009 through 2011-2012 academic years, as well as in two reports filed in 2013 and 2014, the University failed to respond in a prompt and equitable manner to many reports of sexual violence that were not filed as formal complaints;"

- that "with 50 reports of possible sexual harassment, including sexual violence, by students who chose not to file a formal complaint or proceed through the informal resolution process during the 2008-2009 through 2011-2012 academic years . . . the University failed to take appropriate action in 22;" and

- "Twenty-one of those reports alleged sexual assault, some including rape and gang rape. In all of these cases, the University failed to investigate or otherwise determine what occurred. The University did not assess whether a hostile environment existed for complainants and for the University community and did not take steps to eliminate a hostile environment and prevent its recurrence."

And even if a reasonable jury could conclude that Dean Eramo's reputation survived the OCR conclusions, which seems impossible, Dean Eramo's own conduct towards Respondent in this

---

[5] Dean Eramo makes a claim against both the print and the online version of the article, but the substantive allegations are identical.

case independently defeats causation and damages. Dean Eramo has (1) constantly attacked Respondent, a third-party sexual assault victim whom Dean Eramo herself counseled, both in public filings and in comments made to the press; (2) demonstrated no concern for the undeniable and significant psychological harm that Respondent will suffer if forced to sit for a deposition, and (3) sought to make public incredibly personal, private, confidential information for no substantive reason. In fact, the National Organization for Women, one of the pioneers of Title IX, issued a public statement finding that Dean Eramo's conduct "display[ed] a very troubling pattern of abuse towards "Jackie," a woman profiled in that article, which cannot be allowed to continue." NOW also stated that the arguments in Dean Eramo's filings, "recite nearly every false argument made to undermine victims of sexual assault. It is exactly this kind of victim blaming and shaming that fosters rape culture, re-victimizes those brave enough to come forward, and silences countless other victims." (January 6, 2016 Open Letter to UVA President Teresa A. Sullivan from the National Organziation for Women, which can be found at http://now.org/media-center/press-release/an-open-letter-to-uva-president-teresa-a-sullivan/).

With no cognizable defamatory statements, to say nothing of her complete inability to prove either causation or damages, Dean Eramo's case cannot be expected to survive summary judgment. It is therefore impossible for her to satisfy her burden to demonstrate the need to subject third-party Respondent to the severe and certain harm she will suffer if required to sit for a deposition. Rules 26, 45, and 412 support quashing the subpoena in its entirety.

### III. TO THE EXTENT A DEPOSITION IS PERMITTED, IT SHOULD BE BY WRITTEN QUESTIONS AND LIMITED IN SCOPE

In the event the Court rules that the need for a deposition persists, Respondent moves for a Protective Order directing the deposition be conducted by written questions as specifically contemplated by F.R.C.P. 31, and limiting the scope of the permitted questions.

Proceeding by written questions will serve two primary purposes. First, it will allow Respondent to answer the questions in a safe and controlled environment, letting her take as many breaks as are needed to compose herself, without outside pressures. Second, it will eliminate the ability of Plaintiff's counsel to verbally attack or intimidate Respondent whenever they receive an answer to a question that they do not like, or simply to attempt to antagonize or further damage Respondent, as has been their practice from the outset.

With regard to the scope of the written questions, Respondent requests that they be limited to the topic of statements made by Respondent to Defendants about Dean Eramo after July 12, 2014, the date on which Respondent first agreed to speak with Rolling Stone. As is detailed above, as well as throughout Respondent's filings in connection with the motion to compel on documents, the relevance analysis required by Rule 26 must be done in the context of the actual claims and defenses set forth in the complaint and answer. Here, the allegedly defamatory statements relate to what was said about Dean Eramo compared with what was reported in the article. Therefore, the only topic that is arguably relevant, that Respondent is qualified to testify to, is what Respondent said about Dean Eramo.

IV.  **ANY FURTHER QUESTIONING, INCLUDING AS TO CREDIBILITY, SHOULD BE DEFERRED UNTIL AND ONLY IF PLAINTIFF SURVIVES SUMMARY JUDGMENT AND SUBJECT TO FURTHER PROTECTIONS**

In order to address this potentially insurmountable barrier faced by Plaintiff's claims, Respondent requests that, to the extent Plaintiff continues to insist that an in-person deposition is necessary despite the extreme and certain harm that Respondent will suffer, and if the Court believes that an in-person deposition of Respondent is at some point necessary, that this be deferred until and only if Plaintiff's claims survive summary judgment. Respondent also requests that even such an in-person deposition be limited in scope to Respondent's communications

13

regarding Dean Eramo after July 12, 2014, and specifically excluding any inquiry regarding her underlying assault. This approach balances any alleged need for discovery from Respondent with Respondent's privacy and dignity interests protected by Rule 412, her third party status protected by Rules 26 and 45, and the need to avoid any unnecessary re-traumatization and harm that will be caused by any in-person deposition.

Further, in light of the actions taken by Plaintiff to date, and the need to do as much as possible to protect Respondent from the extreme psychological harm that will result, to the extent there is an in-person deposition, Respondent has three additional requests. *First*, she requests an order that prohibits any party and any counsel, including everyone who works for that counsel, from disclosing the location of any deposition. This will help maintain the confidentiality of Respondent's identity and will protect against additional trauma. *Second*, she requests that the deposition take place at the location offered by Respondent, of which all parties are already aware. This is a location where Respondent feels comfortable, it is mutually convenient for all parties, and it provides Respondent with some measure of control over who can access the building, which will help address at least some of the anxiety associated with a deposition. Frankly, it is a common courtesy for depositions to take place at the location requested by the party, let alone a third-party, and Rolling Stone already agreed. Notably, while Plaintiff has already agreed to depose two other third parties at locations of their choosing, one in New York, another in San Francisco, inexplicably, Plaintiff has refused to consent to this location, offering no sensible justification for such refusal. This request is critical given Plaintiff's practice of seeking out both local and national press coverage and providing comments to the press that further attacks and harms Respondent, a third-party here. *Third*, she requests that any deposition be memorialize by written transcript only, and not be videotaped,

which is necessary to decrease the sense of invasion for Respondent and for Respondent's identity to remain confidential.  *Finally*, Respondent requests that any answers to written deposition questions and the transcript of any deposition, if there is one, should be marked confidential pursuant to the Amended Stipulated Protective Order entered in this case.  Further, in light of the demonstrated willingness of Plaintiff to attack Respondent publicly and use the media to further victimize Respondent, and to manipulate the media to try to convince anyone that it is Plaintiff, rather than Respondent, that is the victim here, contrary to the clear facts of the case, we request that no one be permitted to refer to, quote from, or characterize in any way the testimony in the media.

## CONCLUSION

For the reasons stated herein, Respondent respectfully requests the Court:

1) quash Plaintiff's Rule 45 Deposition Subpoenas as currently noticed, or in the alternative

2) order that the deposition of Respondent first be noticed on written questions be utilized on the narrow topic of Respondent's statements about Dean Eramo after July 12, 2014,

3) order the transcript of the written questions and answers be marked as confidential with no comment or characterization to the media;

4) order that any potential in-person deposition of Respondent be held in abeyance pending summary judgment in this matter; and

5) order the location of any future deposition, if there is one, be kept confidential and not be videotaped, and the transcript be marked as confidential with no comment or characterization to the media.

15

Dated: March 15, 2016					Respectfully submitted,

*/s/ Philip O'Beirne*
Rebecca R. Anzidei (VA Bar No. 46346)
Philip J. O'Beirne (VA Bar No. 71956)
STEIN MITCHELL CIPOLLONE BEATO
  & MISSNER LLP
1100 Connecticut Ave., N.W., Ste. 1100
Washington, D.C. 20036
Tel: 202-737-7777
Email: ranzidei@steinmitchell.com
Email: pobeirne@steinmitchell.com

Palma E. Pustilnik (VA Bar No. 73337)
CENTRAL VIRGINIA LEGAL AID SOCIETY
1000 Preston Avenue, Suite B
Charlottesville, VA 22903
Tel: (434) 327-1443
Email: palma@cvlas.org

Steven D. Rosenfield (VA Bar No. 16539)
Jeffrey Fogel (VA Bar No. 76345)
913 E. Jefferson Street
Charlottesville, VA 22902
434-984-0300 Tel
434-220-4852 Fax
Email: attyrosen@aol.com

*COUNSEL FOR RESPONDENT*

16

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of Respondent's Memorandum in Support of Her Motion to Quash Plaintiff's Rule 45 Deposition Subpoena or in the Alternative Motion for a Protective Order was served on the below counsel on March 15, 2016, via ECF.

    Thomas A. Clare (VA Bar No. 39299)
    Elizabeth M. Locke (VA Bar No. 71784)
    CLARE LOCKE LLP
    902 Prince Street
    Alexandria, Virginia 22314
    Telephone: (202) 628-7400
    tom@clarelocke.com
    libby@clarelocke.com
    *COUNSEL FOR PLAINTIFF NICOLE ERAMO*


    Elizabeth A. McNamara (*pro hac vice*)
    Samuel M. Bayard (*pro hac vice*)
    DAVIS WRIGHT TREMAINE LLP
    1251 Avenue of the Americas, 21st Floor
    New York, NY 10020
    Telephone: (212) 603-6437
    lizmcnamara@dwt.com
    samuelbayard@dwt.com

    W. David Paxton (VA Bar No. 19798)
    Michael J. Finney (VA Bar No. 78484)
    GENTRY LOCKE
    10 Franklin Road, S.E., Suite 900
    P.O. Box 40013
    Roanoke, VA 24022-0013
    Telephone (540) 983-9300
    Paxton@gentrylocke.com
    finney@gentrylocke.com

    *COUNSEL FOR DEFENDANTS*

                                    */s/ Philip O'Beirne*
                                    Philip J. O'Beirne (VA Bar No. 71956)